Louis A. CARDUCCI, Appellant,

v.

Donald T. REGAN, Secretary, U.S. Treasury Department, et al.

No. 82–1148.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1982.

Decided Aug. 12, 1983.

---

50. *See supra* note 36.

Peter B. Broida, Washington, D.C., with whom Richard Price, Washington, D.C., was on the brief, for appellant.

John W. Polk, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before MIKVA and SCALIA, Circuit Judges, and MACKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

In this appeal we address the following major question concerning the effect of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C. (Supp. V 1981)): whether agency personnel action which is not an alleged violation of constitutional rights, but which was directly reviewable by district courts under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* (1976), before enactment of the CSRA, continues to be so reviewable after enactment of the CSRA. We answer that question in the negative. Because it was not adequately briefed or argued on appeal, we decline to resolve the further issue, whether the procedural protections of the Due Process Clause of the Fifth Amendment to the Constitution apply to federal agency action affecting the status or tenure of its employees which is not required by the CSRA to be taken only for cause.

I

Appellant Louis A. Carducci, an employee of the United States Customs Service, was informed in April 1980 by memorandum from Frank H. Tuohy, an Area Director for the Service, of his reassignment from the position of Lead Auditor to that of Auditor, purportedly because of "poor performance." The former position was authorized to be held by an employee at grade level GS–12 or GS–13; the latter only by an employee at grade level GS–12. Mr. Carducci's own grade level was GS–12, and was unaffected by the reassignment. He challenged the reassignment through an informal grievance filed with his supervisor. Lacking the authority to reinstate appellant to his former position, the supervisor referred the grievance to Mr. Tuohy, his superior. Appellant also filed a formal grievance with Mr. Tuohy. When informed that the grievance would not be acted upon favorably, appellant requested under agency rule appointment of a hearing examiner. An independent examiner was appointed and, after a full investigation, recommended that appellant be reinstated to the Lead Auditor position.

Mr. Tuohy rejected the examiner's recommendation, and, pursuant to agency grievance procedures, forwarded to Mr. Charles C. Hackett, Jr., Assistant Commissioner in the Office of Management Integrity, appellant's grievance and an explanation of his reasons for rejecting the examiner's recommendation. In the final agency decision on March 23, 1981, Mr. Hackett rejected the examiner's recommendation. Appellant filed a petition with the Office of Special Counsel, asking that an investigation be undertaken and that the matter be presented to the Merit Systems Protection Board. The Special Counsel found "insufficient information evidencing the occurrence or possible occurrence of any prohibited personnel practice" to warrant consideration by the Board. Appellant's App. at 25.

Appellant then sought judicial review of his reassignment in the district court, urging that the court had jurisdiction to review his claims under, *inter alia,* the APA. His complaint, as amended, charged that the reassignment itself was arbitrary and capricious, and that, through several procedural irregularities, his rights under the Due Process Clause of the Fifth Amendment were violated. Appellant's App. at 36. In addition, appellant claimed that Mr. Tuohy's participation in adjudicating the grievance, given his responsibility for the original reassignment, violated 5 C.F.R. § 771.302(b) (1983). Appellant sought an order directing the Customs Service to reassign him to the Lead Auditor position (which had since been reclassified to the GS–13 level) and to amend its regulations to prohibit participation in the disposition of a grievance proceeding by one whose conduct is at issue in the proceeding. By memorandum opinion on January 12, 1982, the district court granted appellee's motion to dismiss on the ground that appellant had failed to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6). We affirm.

## II

### A. *Nonconstitutional Claims*

Those aspects of this case not involving alleged violations of constitutional rights are governed by our decisions in *Borrell v. United States International Communications Agency,* 682 F.2d 981 (D.C.Cir.1982), and *Cutts v. Fowler,* 692 F.2d 138 (D.C.Cir. 1982). Both of those cases, like this one, involved personnel action that did not rise to the level of "adverse action" for which the CSRA provides formal proceedings before the agency, an appeal to the Merit Systems Protection Board, *see* 5 U.S.C. §§ 7501–7701 (Supp. V 1981), and judicial review in the Court of Appeals for the Federal Circuit, 5 U.S.C. § 7703(b)(1) (West Supp.1983). *Borrell* held that a probationary employee could not challenge in district court her dismissal on alleged grounds of "whistleblowing" (a prohibited personnel practice under the CSRA, 5 U.S.C.

§ 2302(b)(8)(A) (Supp. V 1981)), since the CSRA established investigation and corrective action by the Office of Special Counsel as the exclusive avenue of relief. *Cutts* involved precisely the type of employee action at issue in the present case—a reassignment without reduction in grade or pay—and again held that the alleged wrongful motivation (discrimination on the basis of marital status) was for consideration by the Office of Special Counsel and not the courts.

*Borrell* and *Cutts* could conceivably be distinguished on the ground that in both the issue was whether the CSRA *created* an implied private right of action, whereas here the issue assertedly is whether the CSRA implicitly *eliminated* a right of action that previously existed. The distinction between creating a new right of action and failing to eliminate a preexisting one was used in *Borrell* itself, but only in the context of remedies for *constitutional* violations.

The district court apparently assumed—and we agree—that Borrell's allegation that she was dismissed because she voiced concerns over agency practices presented a claim of deprivation of a first amendment liberty without due process of law. . . . Thus the question of whether the CSRA meant to wipe out *such* a preexisting cause of action comes immediately to the fore. This is an altogether different question from that discussed previously, *i.e.,* whether the CSRA *created* a new statutorily-based cause of action for whistleblowing retaliation. It is thus not governed by *Cort v. Ash* [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26] principles. Instead, the issue is whether Congress meant to take away from probationary employees preexisting rights of action *to pursue constitutional rights* in district court actions.

We think not. Where newly enacted statutory remedies are unavailable to a particular segment of employees, the Supreme Court appears to have imposed a kind of "clear statement" requirement on Congress, requiring it to indicate explicit-

ly its intent to displace judicially-created remedies *for constitutional deprivations* .... Nevertheless, the government argues that the district court's decision must be sustained because the CSRA preempts all alternative remedies for all employees, *even those preexisting judicial remedies based upon the Constitution* which have not been replaced by administrative appeals or judicial review of any kind.

682 F.2d at 989 (citations omitted, some emphases added). It should be apparent from the foregoing excerpt that the constitutional nature of the preexisting right was essential to the imposition of a "clear statement" requirement. Indeed, if that were not the case the court's discussion of the *nonconstitutional* claim in both *Borrell* and *Cutts* would have had to eliminate the possibility that, in the circumstances there presented, the requested judicial relief would have been available (on nonconstitutional grounds) even before enactment of the CSRA.[1] Therefore, although both *Borrell* and (to a lesser degree) *Cutts* speak in terms of declining to find an implied right of action, as opposed to finding an implied preclusion of a preexisting right of action, neither opinion attached any consequences to that distinction except insofar as constitutional claims are concerned. The point of both cases is that the exhaustive remedial

scheme of the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions. That principle governs here.

Appellant seeks to distinguish *Borrell* (and would presumably seek to distinguish *Cutts,* which came down only three days before argument) on the ground that here, unlike in those cases, no prohibited personnel practice is alleged.[2] Appellant's Brief at 16. Since, the argument goes, resort to the Office of Special Counsel is only available with regard to prohibited personnel practices defined in 5 U.S.C. § 2302 (Supp. V 1981), see 5 U.S.C. § 1206 (Supp. V 1981), the present case does not fall within the remedial scheme of the Act and therefore judicial relief is not precluded. We think, to the contrary, that failure to include some types of nonmajor personnel action[3] within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intent that no judicial relief be available—that the matter be deemed "committed to agency discretion by law," *see* 5 U.S.C. § 701(a)(2) (1976). Otherwise, one confronts an even more aggravated form of the problem that caused us to eliminate prohibited personnel practices from direct judicial review. That is to say, the luxury

---

1. It is highly doubtful that that possibility *could* have been eliminated. This court had frequently reviewed minor personnel actions not rising to the level of "adverse actions," striking them down under the judicial review provisions of the APA if they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See, e.g., Schwartz v. FERC,* 578 F.2d 417 (D.C.Cir. 1978) (denial of request for leave); *Thomason v. Laird,* 455 F.2d 1376 (D.C.Cir.1971) (denial of promotion); *Estes v. Spence,* 338 F.Supp. 319 (D.D.C.1972) (denial of promotion). In some circumstances, at least, such minor action taken on the basis of marital status (*Cutts*) or on the basis of whistleblowing (*Borrell*) would obviously have qualified as "arbitrary".

2. As discussed below, that assertion is incorrect with regard to the agency's alleged violation of 5 C.F.R. § 771.302(b).

3. More precisely, it is less a failure to include some *types* of nonmajor personnel action, than

a failure to include some *bases or motivations* for nonmajor personnel action. The *types* of personnel action which can constitute grounds for a prohibited personnel practice claim are extremely broad, if not exhaustive. They include reassignment, 5 U.S.C. § 2302(a)(2)(A)(iv) (Supp. V 1981), and even include "any other significant change in duties or responsibilities which is inconsistent with the employee's salary or grade level." 5 U.S.C. § 2302(a)(2)(A)(x). With regard to these actions, however, a prohibited personnel practice is not established unless the basis or motivation for the action is one of those listed in § 2302(b). Thus *Cutts v. Fowler, supra,* which concerned the same sort of personnel action as that in the present case, involved a prohibited personnel practice because the alleged basis for the action was discrimination on the basis of marital status. *See* 692 F.2d at 139; 5 U.S.C. § 2302(b)(1)(E).

of immediate judicial review, without any resort to the administrative process established by the statute, would be accorded to types of personnel action that are not only (like prohibited personnel practices apart from the context of adverse actions) less significant than adverse actions, but that are *so* insignificant as not even to bear mention in the statute.

■ Far preferable to that extravagant result is the scheme which we believe the statute establishes: (1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry," *Cutts v. Fowler, supra,* 692 F.2d at 140; and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts. The third category is not fearfully broad, since the specified minor personnel actions are extensive, *see* note 4, *supra,* and since the infecting basis or motivation includes "[violation of] any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 ...," 5 U.S.C. § 2302(b)(11), which principles in turn include protection against arbitrary action, § 2301(b)(8)(A), and "fair and equitable treatment in all aspects of personnel management ...," § 2301(b)(2). The recited provisions alone would give OSC jurisdiction over that portion of appellant's complaint that alleges violation of 5 C.F.R. § 771.302(b).[4] And appellant's general allegation of "arbitrary and capricious" action might well have charged a prohibited personnel practice if it had been further specified. Under § 2302(b)(6), for example, it is a prohibited personnel practice to "grant

any preference or advantage ... to any employee or applicant for employment ... for the purpose of improving or injuring the prospects of any particular person for employment." And under § 2302(b)(10) it is a prohibited personnel practice to "discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others...." With such broad bases for seeking the assistance of OSC, we have little fear that Congress has inadvertently created a significant field in which the employing agency itself has the last word. To the contrary, those alleged wrongs that can only be consigned to category (3) described above seem relatively minor both in their substantive effect and in the malevolence of their motivation.

■ We hold, therefore, that the district court was correct in ruling that appellant's complaint failed to set forth any valid nonconstitutional claim under the APA. The Customs Service's alleged prohibited personnel practice in violating 5 C.F.R. § 771.-302(b) was initially to be considered by OSC. If appellant properly presented it to that agency (a point which is in some doubt), he has in any event sought no review of that agency's action. The Customs Service's other actions, not constituting alleged prohibited personnel practices, were "committed to agency discretion by law," 5 U.S.C. § 701(a)(2) (1976).

### B. *The Constitutional Claim*

The district court did not separately discuss appellant's claims that all of the agency actions of which he complained violated the Due Process Clause of the Fifth Amendment. *See* Amended Complaint, ¶¶ 19, 25, and VB(1); Points and Authorities in Support of Plaintiff's Motion for Leave to File an Amended Complaint at 2. But since, as we have seen, our *Borrell* holding regarding the exclusivity of CSRA remedies did not extend to constitutional

---

**4.** Appellant's complaint did not seek review of OSC's compliance with the statutory require-    ment of conducting an adequate inquiry.

claims, the reasoning of that case could not automatically support the granting of a Rule 12(b)(6) motion with regard to those claims. For the reasons stated below, however, we affirm the dismissal without considering them.

In this appeal, appellant has preserved his due process claim only with regard to his assertion that Charles Hackett "rel[ied] on information not contained in the grievance file or record when he issued the final decision on the grievance." *See* Appellant's Brief at 11. Of course not all deprivations of interests protected by the Fifth Amendment are entitled to the same elements of process, *compare Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), *with Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *see* Friendly, *"Some Kind of Hearing",* 123 U.Pa.L.Rev. 1267 (1975), but the element of knowing, and therefore having an opportunity to refute, all of the evidence on the basis of which the harmful action is taken, is a fairly rudimentary one. *See Goldberg v. Kelly, supra,* 397 U.S. at 271, 90 S.Ct. at 1022. We think it would be applicable to the deprivation in the present case, if deprivation there was.

The major question regarding this claim, however, is whether there has been any deprivation of "property" which would bring the due process guarantee into play.[5] This depends upon whether the plaintiff had "a legitimate claim of entitlement" to the interest in question, *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)—here, continuing tenure in the Lead Auditor position. In the ordinary due process case, the determination of "entitlement" is relatively simple, since it arises, if at all, from the terms of a statute. *See, e.g., Goldberg v. Kelly, supra* (entitlement to welfare benefits). Government employment cases pose special difficulty, because the act of hiring or the continuing employment relationship with the government may give rise to "rules or understandings that secure certain benefits" quite apart from any governing statute. *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. The employee "might be able to show from the circumstances of [his] service—and from other relevant facts—that he has a legitimate claim of entitlement."[6] *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33

---

**5.** The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." There is of course no conceivable basis for asserting a deprivation of life or liberty in the present case. Government "stigmatization" of an individual, joined with impairment of "some more tangible interests such as employment," can constitute a deprivation of liberty. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976). Even assuming, however, that the interest in the particular position of Lead Auditor is "tangible" enough to qualify; and even assuming that the complaint's failure to allege any dissemination of the reason for the reassignment to anyone except the plaintiff himself is not so fundamental a defect as to eliminate any "basis" for a defamation (stigmatization) claim, *see* Fed.R.Civ.P. 12(b)(6) and *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); neither the mere fact of the reassignment nor the reason given for it ("poor performance") rises to that level of infamy necessary to invoke the stigma cases. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1100–01 (9th Cir.1981), *cert. denied,* 455 U.S.

948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *Mazaleski v. Treusdell,* 562 F.2d 701, 709–15 (D.C.Cir.1977).

**6.** The application of this factor, among other things, distinguishes the present case from the Fifth Circuit's recent decision in *Broadway v. Block,* 694 F.2d 979 (1982), which rejected a claim that due process guarantees were applicable to the reassignment of a federal employee. That case was decided in the context of a motion for summary judgment under Rule 56, rather than a motion to dismiss—so that the plaintiff's failure to allege any separate "understanding" with the employing agency eliminated that as a possible ground for relief. In addressing a Rule 12(b)(6) motion, by contrast, we must assure ourselves that " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), *quoting from Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see also United States ex rel. Joseph v. Cannon,* 642 F.2d 1373, 1378 (D.C.Cir.1981), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982).

L.Ed.2d 570 (1972). *See also Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1979); *Colm v. Vance,* 567 F.2d 1125 (D.C.Cir.1977).

The foregoing principle is, however, subject to the unquestioned exception that no such rules, understandings or circumstances can contravene the intent of the legislature regarding the employment entitlements that can be conferred. *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1099 (9th Cir. 1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982); *Baden v. Koch,* 638 F.2d 486 (2d Cir.1980); *cf. Stone v. Philbrook,* 528 F.2d 1084, 1091 (2d Cir.1975). Any other rule would deprive the people of their control over the civil service, and leave the status and tenure of all employees to be governed by whatever arrangements incumbent administrators may agree to or prescribe.

Thus, ruling upon the validity of the 12(b)(6) dismissal of appellant's constitutional claim, requires a determination whether the provisions of the Civil Service Reform Act of 1978 which set forth those personnel actions that can only be taken "for cause," are intended to establish the exclusive elements of status and tenure to which civil service employees are entitled. The exclusivity of the CSRA entitlements finds some support in the comprehensive nature of the legislation; in its embodiment of status and tenure protections previously accorded only by Executive Order, *compare* 5 U.S.C. §§ 7501, 7511 (1976) and Exec. Orders Nos. 10,988, § 14, 3 C.F.R. 1959–1963 Comp. at 521, 527 (1962), and 11,491, § 22, 3 C.F.R. 1966–1970 Comp. at 861, 874 (1969), *with* 5 U.S.C. §§ 7503, 7513 (Supp. V 1981); and in its prohibition of administrative supplementation of these status and tenure protections through collective bargaining agreements, 5 U.S.C. § 7106 (Supp. V 1981). But the issue is one of first impression, and of major importance to all employees in the federal competitive service. We will not resolve that issue on the basis of briefing and argument by counsel which literally consisted of no more than the assertion of violation of due process rights, with no discussion of case law supporting that proposition or of the statutory text and legislative history relevant to the central question of the exclusiveness of entitlements set forth in the CSRA.

■ The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. Thus, Rule 28(a)(4) of the Federal Rules of Appellate Procedure requires that the appellant's brief contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Failure to enforce this requirement will ultimately deprive us in substantial measure of that assistance of counsel which the system assumes—a deficiency that we can perhaps supply by other means, but not without altering the character of our institution. Of course not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research. But where counsel has made no attempt to address the issue, we will not remedy the defect, especially where, as here, "important questions of far-reaching significance" are involved. *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 7 (D.C.Cir.1982). We therefore decline to entertain appellant's asserted but unanalyzed constitutional claim.

For the reasons stated, the judgment is

*Affirmed.*