**NATIONAL TREASURY EMPLOYEES UNION, et al., Appellants,**

v.

**Roscoe L. EGGER, Commissioner, Internal Revenue Service, et al.**

No. 84–5594.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1985.

Decided Feb. 25, 1986.

Richard S. Edelman, Washington, D.C., with whom Lois G. Williams, Washington, D.C., was on brief, for appellants.

Scott T. Kragie, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before WRIGHT and EDWARDS, Circuit Judges, and DAVIS,* Circuit Judge,

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

United States Court of Appeals for the Federal Circuit.

Opinion for the Court filed by Circuit Judge DAVIS.

DAVIS, Circuit Judge:

We are called upon to decide whether the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified, as amended, in scattered sections of 5 U.S.C. (1982)) (CSRA) precludes judicial review by a district court of a particular personnel action challenged by some federal employees. The National Treasury Employees Union (NTEU), on behalf of certain Internal Revenue Service (IRS) machine operators, brought suit in the district court below, alleging that the IRS's reclassification of their positions from the Prevailing Rate pay category to the General Schedule pay system violated the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (1976) (APA), and their Fifth Amendment right to due process. Citing this court's decision in Carducci v. Regan, 714 F.2d 171 (D.C.Cir. 1983), that the CSRA precluded judicial review of minor personnel actions, the district court dismissed appellants' claims for lack of subject matter jurisdiction. We affirm.

## I.

NTEU represents a class of workers including mailing, duplicating, and binding machine operators employed by the IRS at its Service Center. In addition to operating mail processing, duplicating, packaging and book-binding machines, these operators perform duties such as setting-up, adjusting, monitoring and repairing the various machines. Prior to 1980, the federal positions held by these employees were classified in the Wage Grade 400 series and the employees were paid in accordance with the

Prevailing Rate system, 5 U.S.C. § 5341 et seq. In 1980, following the Civil Service Commission's 1978 revisions of the classification standards for the General Schedule, GS–350 Equipment Operator series, and its subsequent amendment of the classification standards for the Wage Grade WG–4000 series, the positions were converted to the lower-paying General Schedule, 5 U.S.C. § 5332.

In response to the reclassification decision, several IRS employees appealed to the Office of Personnel Management (OPM) as well as to the IRS. They asserted that the nature of their duties precluded classification of their position under the General Schedule pursuant to 5 U.S.C. § 5102(c)(7).[1] Appellants' classification appeals were denied by IRS and OPM.[2]

Appellants then sought judicial review of the reclassification decision through this suit in the district court pursuant to the APA. Appellants urged that the reclassification was arbitrary, capricious and contrary to 5 U.S.C. §§ 5102(c)(7) and 5342(a)(2)(A), and therefore was in violation of the APA. In addition, appellants alleged that in reclassifying their positions the IRS violated the Fifth Amendment by divesting them of their rights "to be paid under the Prevailing Rate system, and to receive all compensation, promotions, within-grade increases and cost of living adjustments rightfully due them under that system."

By memorandum opinion on June 26, 1984, the district court granted appellees' motion to dismiss the complaint on the ground that the court lacked subject matter jurisdiction. In that court's view, the plaintiff's claims constituted grounds for a prohibited personnel practice. Under the scheme of review outlined in Carducci, supra, the district court held that appellants were required to appeal their claims to the

---

1. 5 U.S.C. § 5102(c)(7) provides, in pertinent part, that the General Schedule does not govern the pay off:

    employees in recognized trades or crafts, or other skilled mechanical crafts, or in unskilled, semiskilled, or skilled manual-labor occupations, and other employees including foremen and supervisors in positions having

    trade craft, or laboring experience and knowledge as the paramount requirement....

2. NTEU also appealed to the Director of OPM and the IRS requesting that the conversion of these employees to the General Schedule be reversed. NTEU's requests were rejected.

Office of Special Counsel (OSC) within the Merit Systems Protection Board (MSPB). The court indicated that OSC must initially determine whether a prohibited personnel practice has occurred; if so, OSC then decides whether to seek review of the agency's action before the MSPB. The district court further reasoned that appeal to OSC would adequately resolve appellants' constitutional claims since those claims have no basis independent of the alleged statutory violations.

## II.

Appellants contend (1) that the district court erred in characterizing their claims as a prohibited personnel practice, and (2) that their claims do not fall within the CSRA enforcement scheme. Consequently, they urge that the CSRA does not foreclose district court review of their claims and that *Carducci* is not controlling in their case.

### A. NONCONSTITUTIONAL CLAIM

Appellants alleged that the IRS action in reclassifying their positions into another pay category was arbitrary and capricious and in violation of certain statutory provisions implementing the pay classifications and rate systems concerning federal positions. As we have said, the district court held that the alleged actions constitute grounds for a prohibited personnel action cognizable by the OSC. In so holding the court reasoned that

[t]he list of specified minor personnel actions so appealable [to the OSC] includes "a decision concerning pay, benefits, or awards," 5 U.S.C. § 2302(a)(2)(ix), and the laws allegedly violated implement the merit system principles, which protect against "arbitrary action," sec-

tion 2301(b)(8)(A), and insure "fair and equitable treatment in all aspects of personnel management," section 2301(b)(2). *See* 5 U.S.C. § 2302(b)(11) (1982).

We agree that appellants' claims can constitute a minor personnel action under the second category of *Carducci* [3] and are properly appealable, at least in the first instance, to OSC. We are told by appellants, however, that their claim did not invoke such a prohibited personnel practice. They say that, while the district court relied on 5 U.S.C. § 2302(a)(2)(ix) to show that the pay-category reclassification was a personnel action, the court failed to indicate that the action was prohibited by CSRA. We must reject that argument. The district court correctly invoked 5 U.S.C. § 2302(b)(11); under that provision, a personnel action is prohibited if the action "violates any law, rule or regulation implementing or directly concerning, the merit systems principle contained in section 2301...." In this case, appellants have asserted a violation of law under the Act of September 6, 1966, Pub.L. No. 89–554, 80 Stat. 471, codified at title 5, United States Code. This statute implements merit system principles prohibiting "arbitrary action" (§ 2301(b)(8)(A)), insuring "fair and equitable treatment in all aspects of personnel management" (§ 2301(b)(2)) and providing "equal pay ... for work of equal value" (§ 2301(b)(3)). These merit system principles would trigger OSC's jurisdiction over appellants' claims.

Appellants have also argued that, in any event, the CSRA does not preclude judicial review of federal employees' appeals challenging the general transfer of their positions from one statutory pay system to another. Because the disputed transfer was based on classification guidelines

---

**3.** *Carducci* held that the statute (CSRA) establishes:

(1) for major personnel actions specified in the statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of

Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirements that the OSC perform an adequate inquiry," *Cutts v. Fowler, supra,* 692 F.2d [138] at 140 [(D.C.Cir.1982)]; and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts. *Carducci v. Regan, supra,* at 175.

promulgated by the Government, the employees insist that their action is more akin to the rulemaking actions involved in *NTEU v. Devine,* 733 F.2d 114 (D.C.Cir. 1984), and *International Ladies Garment Workers' Union v. Donovan,* 722 F.2d 795 (D.C.Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 93, 83 L.Ed.2d 39 (1985) (ILGWU), than to the personnel actions involved in *Carducci.* In *NTEU v. Devine,* the NTEU brought suit challenging as null and void certain regulations affecting changes in federal personnel reduction-in-force procedures. Rejecting the argument that the CSRA precluded judicial review of that case, the court held that the detailed scheme of administrative review does not apply to pre-enforcement judicial review of rules. *NTEU v. Devine,* 733 F.2d at 117. The *ILGWU* case did not concern the CSRA but dealt with the enforcement of the Fair Labor Standard Act (FLSA). In that case, the court rejected the proposition that the existence of statutory remedial provisions under the FLSA impliedly precluded a judicial challenge to agency rulemaking under the APA. *ILGWU,* 722 F.2d at 802.

We do not at all ignore or disparage the rulings in those cases. Although the case at bar concerns a classification matter, the action here in dispute does not involve the validity of a general rule or a rulemaking subject to judicial review as did the action in *NTEU v. Devine.* Rather, the current suit is merely a challenge to the application of an existing rule and thus within the CSRA scheme of review.

We hold, therefore, that the district court was correct in dismissing appellants' complaint for lack of subject matter jurisdiction. The alleged prohibited personnel practice falls under the second category of *Carducci* and a complaint should be brought initially before OSC.

Another possible channel of relief for appellants may be through a monetary suit (for the increased pay they seek) in the United States Claims Court under 28 U.S.C. § 1491(a). If the transfer was wholly illegal and if they are now entitled, as a matter of law, to the higher pay of the former system, the Claims Court may well have jurisdiction to award them that higher pay for the work they are doing. *See Selman v. United States,* 498 F.2d 1354, 204 Ct.Cl. 675 (1974); *cf. United States v. Testan,* 424 U.S. 392, 402–03, 96 S.Ct. 948, 955–56, 47 L.Ed.2d 114 (1976).

### B. CONSTITUTIONAL CLAIM

In their original complaint, appellants allege a Fifth Amendment violation of due process. On this appeal that question has not been briefed or argued. Nor was it presented in the district court. We therefore do not reach the constitutional question of whether these federal employees were deprived of interests protected by the Fifth Amendment.

*Affirmed.*