MICHEL, Circuit Judge.
 

 Stephen Bosco and other federal employees appeal the order of the United States Claims Court granting summary judgment against them in their suit challenging a reclassification by the Internal Revenue Service (IRS) of their positions from the WG-4400 Printing and Reproduction Series under the Prevailing Rate system to the GS-350 Equipment Operator Series in the General Schedule.
 
 Bosco, et al. v. United States,
 
 No. 693-87 C (Cl.Ct. May 23, 1990). Because the Claims Court had subject matter jurisdiction pursuant to the Tucker Act over appellants’ claims, and because the court correctly determined that the reclassification was not arbitrary or capricious and was supported by substantial evidence, we affirm.
 

 BACKGROUND
 

 Appellants operate mail processing equipment used in sending and receiving the enormous quantities of mail associated with the annual processing of income tax returns at IRS’ regional Service Centers.
 
 *881
 
 Although appellants’ jobs are directed to the clerical task of routing mail, their work environment is hardly that of a typical office mail room: Appellants work in a noisy, dirty, factory-like setting, where they operate and maintain heavy machinery (even making minor repairs in some cases).
 

 The government’s basic pay scale is called the General Schedule (GS). 5 U.S.C. §§ 5104, 5332 (1988). Specifically excluded from GS classifications, 5 U.S.C. § 5102(c)(7), are so-called “prevailing rate employees,” defined as workers “employed in or under an agency in a recognized trade or craft ... and any other individual, including a foreman and a supervisor, in
 
 a position having trade, craft, or laboring experience and knowledge as the paramount requirement.”
 
 5 U.S.C. § 5342(a)(2)(A) (emphasis added). The pay for such workers under the “Wage Grade,” or “Prevailing Rate” system (PRS), is to be set “so as to attract and retain qualified prevailing rate employees,” and is to be periodically adjusted to keep it “in line with prevailing levels for comparable work within a local wage area.” 5 U.S.C. § 5341.
 

 Prior to 1972, the appellants’ mail processing equipment operator positions were classified under the PRS at five IRS Service Centers, and under the GS at the other five. In 1972, IRS reclassified all the positions into the GS pursuant to advice it had received from the Civil Service Commission’s (CSC) Central Office. Then in 1974, after a study by one of CSC’s regional offices, IRS again reclassified the positions, this time into the WG-4400 Printing and Reproduction Series in the PRS. In November 1978, one of CSC’s successor agencies, the Office of Personnel Management (OPM),
 
 [1]
 
 issued a revised position classification standard for one class of positions in the GS, the GS-350 Equipment Operator occupational series. In February 1980, OPM determined in response to an IRS inquiry that the mail processing equipment operator positions in the IRS Service Centers met the definition of the GS-350 series, and IRS thereafter reclassified the positions from the PRS to the GS.
 

 The National Treasury Employees Union (NTEU), on behalf of Bosco and other IRS employees in the mail processing equipment operator positions, filed an appeal with the North Atlantic Regional Office of IRS, which after an on-site desk audit, concluded in November 1980 that the GS classification was proper. In March 1981, the IRS National Office sustained this determination, explaining that “the concept of learning a trade or craft is not present in that the type of products produced are relatively simple, requiring mainly that outgoing written correspondence be processed in a prescribed fashion,” and that the requirement of performing minor repairs was “incidental to the position, not the primary purpose.” Joint Appendix (Jt.App.) at 200. On appeal, the Department of the Treasury affirmed the National Office’s determination.
 

 This decision was appealed to OPM’s Eastern Region Office, which in February 1982 concluded that because the positions’ “paramount requirement rests in the ability to operate and monitor machinery so that mail can be processed according to instructions and correctly separated and routed,” and since “[tjhis type of knowledge is General Schedule in nature,” the positions were properly classified under the GS. Jt.App. at 219. The NTEU requested the Commissioner of the IRS and the Director of OPM to reconsider their decisions and to reclassify the positions from the GS back to the PRS. Both denied the request.
 

 Having thus exhausted administrative remedies, NTEU filed a class action in the U.S. District Court for the District of Columbia under the Administrative Procedures Act, challenging the authority of IRS and OPM to reclassify the positions. The court dismissed the action for lack of subject matter jurisdiction on the ground that the claims constituted grounds for a prohibited personnel practice under the Civil Service Reform Act (CSRA), 5 U.S.C.
 
 *882
 
 § 2302(b)(ll) (1988), which must first be submitted to the Office of Special Counsel (OSC). The court of appeals affirmed.
 
 National Treasury Employees Union v. Egger,
 
 783 F.2d 1114 (D.C.Cir.1986).
 

 Appellants then filed suit in the Claims Court, seeking compensation for lost pay and restoration to the PRS. The government moved to dismiss for lack of subject matter jurisdiction, and its request was denied.
 
 Bosco, et al. v. United States,
 
 No. 693-87 C (Cl.Ct. May 26, 1989). The parties stipulated to a series of facts, and on cross motions for summary judgment, the court ruled in favor of the government.
 
 Bosco, et al. v. United States,
 
 No. 693-87 C (Cl.Ct. May 23, 1990). Bosco and his fellow employees appealed.
 

 We have jurisdiction over their appeal pursuant to 28 U.S.C. § 1295(a)(3) (1988).
 

 DISCUSSION
 

 Two issues are presented for our review: (1) whether the Claims Court had jurisdiction to decide this case, and if so, (2) whether it correctly determined that IRS’ reclassification of appellants’ positions was not arbitrary or capricious and was supported by substantial evidence. The subject matter jurisdiction of the Claims Court is a question of law,
 
 see Phillips v. GSA,
 
 924 F.2d 1577, 1579-80 (Fed.Cir.1991), which we therefore review de novo.
 
 Chevron U.S.A., Inc. v. United States,
 
 923 F.2d 830, 833 (Fed.Cir.1991). Whether the Claims Court correctly determined that IRS did not act arbitrarily or capriciously is also question of law, subject to de novo review.
 
 Cf. American Permac v. United States,
 
 831 F.2d 269, 273 (Fed.Cir.1987),
 
 cert. dismissed,
 
 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988) (in reviewing Court of International Trade’s review of ITC determination, this court reviews the underlying ITC decision);
 
 Atlantic Sugar v. United States,
 
 744 F.2d 1556, 1559 n. 10 (Fed.Cir. 1984) (“We review that court’s [Court of International Trade’s] review of an ITC determination by applying anew the statute's express judicial review standard.”).
 

 I
 

 The Claims Court’s May 1989 order denying the government’s motion to dismiss Bosco's complaint for lack of subject matter jurisdiction held that since the “prevailing rate” wage legislation, codified at 5 U.S.C. §§ 5341-5349 (1988), is á money-mandating statute, it had Tucker Act jurisdiction over the case.
 
 Bosco, et al. v. United States,
 
 No. 693-87 C, slip op. at 4 (May 26, 1989). The government now argues in this appeal that the court had no jurisdiction and should have dismissed the case.
 

 Our precedent clearly establishes that the “prevailing rate” legislation is a pay-mandating statute.
 
 Bradley v. United States,
 
 870 F.2d 1578, 1580 (Fed.Cir.1989);
 
 Adams v. United States,
 
 810 F.2d 1142, 1143-44 (Fed.Cir.1987).
 
 See also Amell v. United States,
 
 384 U.S. 158, 159, 86 S.Ct. 1384, 1385, 16 L.Ed.2d 445 (1966). The statute is therefore a proper basis for Claims Court jurisdiction.
 
 Bradley,
 
 870 F.2d at 1580.
 

 The government nevertheless argues that the Claims Court’s jurisdiction over suits such as this was abrogated by the enactment of the CSRA, which was intended to provide the exclusive means of appealing an unwanted personnel action. The government’s argument is based primarily upon
 
 United States v. Fausto,
 
 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), in which the Supreme Court held that the CSRA precluded a nonpreference eligible member of the excepted service
 
 [2]
 
 from challenging his suspension in a suit under the Back Pay Act in the Claims Court. The Court noted that although Chapter 75 of the CSRA provided for review by the MSPB of adverse personnel actions, based on misconduct, taken against members of the competitive service and preference eligible members of the excepted service, the CSRA did
 
 not
 
 provide ad
 
 *883
 
 ministrative or judicial review for nonpref-erence employees, like Fausto, in the excepted service.
 
 [3]
 
 The statute’s silence as to nonpreference members of the excepted service, the Court reasoned, reflected Congressional intent to preclude any review for such employees: “The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpref-erence excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75, combine to establish a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter.”
 
 Id.
 
 at 448, 108 S.Ct. at 673.
 

 The government argues that
 
 Fausto
 
 has established that “the CSRA provides the exclusive avenues for judicial review of adverse personnel actions against federal employees,” and that the Claims Court therefore has no jurisdiction to review a classification decision. Brief for Appellee at 13. The government’s argument, however, misapprehends the holding of
 
 Fausto.
 
 The Supreme Court did not rule that the CSRA provided the only means of judicial review of
 
 any
 
 actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically
 
 covered
 
 by the CSRA: Silence as to certain employees “displays a clear congressional intent to deny the excluded employees the protections of Chapter 75—including judicial re
 
 view—-for personnel action covered by that chapter.”
 
 484 U.S. at 447, 108 S.Ct. at 673 (emphasis added).
 
 Fausto
 
 involved an adverse personnel action of the general
 
 type
 
 covered by the CSRA, but against a particular
 
 employee
 
 who was
 
 not
 
 covered. In contrast, the instant case involves a type of personnel action not covered at all by the CSRA, for any employees, whether of the competitive or excepted service.
 

 The CSRA provides employees with procedural protections with respect to three general types of personnel actions: Chapter 23 forbids “prohibited personnel practices,” such as discrimination, coercion of political activity, nepotism, and reprisal against “whistleblowers,” 5 U.S.C. § 2302 (1988); Chapter 43 covers removals and reductions in grade and pay based on unacceptable performance, 5 U.S.C. § 4303 (1988); and Chapter 75 covers “adverse personnel actions”—removal, suspension, furlough, reduction in grade and pay—taken to “promote the efficiency of the service” (i.e., involving employee misconduct). 5 U.S.C. §§ 7503, 7513 (1988).
 
 See Fausto,
 
 484 U.S. at 445-47, 108 S.Ct. at 672-73. But the CSRA does
 
 not
 
 address the transfer of positions from one pay system to another. Since the CSRA thus does not cover the action taken in the instant case, it and the holding of
 
 Fausto
 
 have no application here.
 

 II
 

 The Claims Court reviews the classification decisions of an agency only to determine whether the action was arbitrary or capricious or was not supported by substantial evidence.
 
 See Bookman v. United States,
 
 453 F.2d 1263, 1267-68, 197 Ct.Cl. 108 (1972). As we have discussed,
 
 supra,
 
 we review the determination of the Claims Court on this issue de novo.
 

 The critical statutory language at issue in the classification determination here occurs in two places in title 5. First, the prevailing rate provisions of Subchapter IV of chapter 53, define “prevailing rate employee” as:
 

 an individual employed in or under an agency in a recognized trade or craft, or other skilled mechanical craft, or in an unskilled, semiskilled, or skilled manual labor occupation, and any other individual, including a foreman and a supervisor, in a
 
 position having trade, craft, or laboring experience and knowledge as the paramount requirement.
 

 5 U.S.C. § 5342(a)(2)(A) (1988) (emphasis added). Second, chapter 51 of title 5, which
 
 *884
 
 establishes the General Schedule, contains nearly identical language excluding such prevailing rate employees from coverage under the GS. 5 U.S.C. § 5102(c)(7).
 

 Appellants argue that IRS’ action, and the OPM and Claims Court decisions upholding it, are based on a misreading of this statutory language, in which “the ‘paramount requirement’ of appellants’ work is defined by the end product, which is the processing of mail, rather than by performance of the actual machine work used to get the job done.” Brief for Appellants at 15. According to Appellants, “[t]he ‘paramount requirement’ of a machine operator’s position can be properly defined only by the work actually performed, not by the job that would have been done if machinery were unavailable.”
 
 Id.
 
 at 16. But we find appellants’ arguments unavailing for two reasons.
 

 In the first place, it is apparent that the agency
 
 did
 
 consider the nature of the actual work performed by employees in appellants’ positions, and determined that this work—operating certain types of mail-processing machinery—did not require “trade, craft, or laboring experience.” Appellants in this regard argue that the fact that substantial expertise is required is borne out by the fact that it takes up to a year to be properly trained in the operation of the equipment used in the job, that the positions require making repairs to the machinery, and that the jobs involve manual labor. But, as the government points out, the instructional materials supplied with the machines explicitly state that they are designed for “modified self-instruction,” indicating that they do not involve the sort of skills associated with a trade or craft requiring a long full-time apprenticeship, and the repairs and manual labor involved are within the scope of what is specifically covered under the GS-350 series. In short, appellants have failed to demonstrate any error in IRS’ conclusion that “[o]nly in instances where there is a need for a body of knowledge peculiar to a trade or craft can work be exempted from the general schedule.” Therefore we hold that IRS’ reasoned conclusion, that “[although [the] position may require a trainee period of up to a year, the concept of learning a trade or craft is not present in that the type of products produced are [sic] relatively simple, requiring mainly that outgoing written correspondence be processed in a prescribed fashion,” Letter of March 20, 1981, Jt.App. at 200, is supported by substantial evidence and is not arbitrary or capricious.
 

 Second, to the extent that the agency did rely not only on the type of machinery used but also on the end product of the work, the processing of mail, such reliance was proper. The February 1982 OPM decision affirming the classification noted that “the paramount requirement rests in the ability to operate and monitor machinery so that mail can be processed according to instructions and correctly separated and rout-ed____ In this process, the incumbents are required to have a knowledge of the types of documents they are working with and some postal regulations. This type of knowledge is General Schedule in nature.” Jt.App. at 219. OPM thus takes cognizance of the fact that the machinery to be operated does not exist in a vacuum, but is operated for a purpose in which some clerical knowledge or skill, “General Schedule in nature,” is required. We find nothing arbitrary or capricious in OPM’s consideration of the clerical knowledge associated with the purpose of the positions at issue in making its decision that those positions are properly classified under the GS.
 

 Appellants also argue that because their positions are essentially “blue collar” in nature, their positions, ipso facto, should be classified as Wage Grade rather than GS. We disagree. The statutory language does not include the term “blue collar,” but speaks rather of the nature and extent of skill or knowledge required to perform the work required in a particular position. While the PRS may, as appellants assert, apply generally to blue collar positions, appellants have pointed to no legislative history clearly supporting the proposition that Congress intended the “paramount requirement” language in title 5 to place
 
 all
 
 blue-collar jobs in the PRS and
 
 all
 
 white-collar jobs under the GS. Nor have appellants shown error in IRS’ and OPM’s interpreta
 
 *885
 
 tion of the statutory language as focusing solely on the nature of the work to be performed, not the physical environment in which it is performed. Thus, the agency properly ignored the admittedly factory-like character of appellants’ workplace.
 

 Appellants further argue that the reclassification is a departure from IRS’ past practice in classifying the machine operator positions, and that it therefore bears a greater burden to supply a reasoned analysis for the change than it would if it were making an initial determination. But IRS had uniformly classified all the positions at issue under the GS from 1972-1974, and had done so in half of its facilities even before 1972. The 1980 classification, then, was not really a complete departure from the past, but rather a return to a prior practice. Moreover, IRS and OPM
 
 did
 
 provide a thorough explanation for the classification under the GS rather than the PRS: Although their written decisions do not explicitly address the 1980 change in policy, they do address the specific concerns and observations of the on-site study which led to the 1974 PRS classification.
 

 In sum, these and other arguments advanced by the appellants are insufficient to persuade us that there was anything arbitrary or capricious, or unsupported by substantial evidence, in the determination of IRS and OPM that the positions at issue are properly classified under the GS. Accordingly, the classification determination must be affirmed.
 

 CONCLUSION
 

 The Claims Court has jurisdiction, unaffected by the CSRA and the Supreme Court’s decision in
 
 United States v. Faus-to,
 
 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), over a suit for lost pay and restoration to the PRS brought under 5 U.S.C. §§ 5341-5349 (1988). The Claims Court correctly decided that the IRS classification determination at issue was not arbitrary or capricious and was supported by substantial evidence. Therefore the judgment is, in all respects,
 

 AFFIRMED.
 

 [1]
 

 . The Civil Service Reform Act of 1978 abolished the CSC and replaced it with three new entities: the Merit Systems Protection Board (MSPB), the Office of Special Counsel (OSC), and OPM.
 

 [2]
 

 . The term "competitive service” refers to federal employees who have been hired after taking a Civil Service examination, while the term "excepted service" refers to employees hired without the requirement of such an examination. "Preference eligible” refers to the special preference given to certain applicants to government positions, such as veterans of the armed forces.
 

 [3]
 

 . Since
 
 Fausto
 
 was decided, the CSRA has been amended to provide review for nonpreference eligible members of the excepted service.
 
 See
 
 Civil Service Due Process Amendments, Pub.L. No. 101-376, 104 Stat. 461 (1990).