RANDOLPH, Senior Circuit Judge,
dissenting.
I do not agree that we have jurisdiction over Sierra Club’s petition for judicial review. The original regulations at issue, 40 C.F.R. § 63.6(e)-(h) (1994), exempt periods of startup, shutdown, and malfunction from opacity and non-opacity emission *1029 standards. When EPA promulgated these regulations in 1994, Sierra Club took no legal action. Yet under the Clean Air Act a petition for judicial review of an EPA regulation must be filed within 60 days of the regulation’s publication in the Federal Register. 42 U.S.C. § 7607(b)(1).
Of course an agency may give notice and ask for comment on whether an existing regulation should be modified or repealed or retained, or it may indicate in response to comments that it has reconsidered the regulation. See Kennecott Utah Copper Corp. v. Dep’t of Interior, 88 F.3d 1191, 1214 (D.C.Cir.1996). Or an agency may give its regulation new significance by altering other regulations incorporating it by reference. See id. at 1226-27. In any one of these situations the 60-day period would begin to run again. But nothing of the sort occurred here. According to Sierra Club, EPA’s rulemakings in 2002, 2003, and 2006 rendered enforcement of the 1994 startup, shutdown, and malfunction regulations more difficult. Petr.’s Br. at 29. Even if true,[1] that could hardly have amounted to agency “action” re-promulgating the 1994 regulations, which is what § 7607(b)(1) requires as a prerequisite for judicial review. After all, Sierra Club’s complaint is not that the 1994 regulations are now hard to enforce; it is instead that the 1994 regulations are invalid and always have been. The recent rules did not alter the exemption for startup, shutdown, and malfunction events. The new rules simply modified requirements for each source’s plan regarding implementation of the duty to minimize pollution during the exempt periods. Sierra Club had the option— which it exercised[2] — of challenging the new rules on the ground that the modifications will lead to unacceptable levels of pollution.
In Kennecott, regulated industries sought judicial review of an allegedly invalid regulation after changes in related regulations made its enforcement more likely and more punitive. Sierra Club has no comparable financial incentives capable of assessment by a court; instead, it presumably has an incentive to challenge any regulatory change that might lead to increased pollution. The majority’s rationale implies that each time EPA changes an emissions regulation, it risks subjecting every related regulation to challenges from third parties. Such a regime, and the instability it generates, is intolerable. Perhaps that is why, until today, we have limited the constructive reopening doctrine to cases involving regulated entities. See Envtl. Def. v. EPA, 467 F.3d 1329, 1334 (D.C.Cir.2006).
Although EPA did not reopen its 1994 regulations for judicial review, Sierra Club has another option: it may file a petition to rescind those regulations and, if EPA denies the petition, Sierra Club may seek judicial review of EPA’s action. See, e.g., Pub. Citizen v. Nuclear Regulatory Comm’n, 901 F.2d 147, 152 (D.C.Cir.1990). There is no basis for permitting Sierra Club to circumvent that procedural re *1030 quirement in this case. See Kennecott, 88 F.3d at 1214.
There is another problem with the majority opinion. It disposes of the case with an argument not addressed in the brief of either party — namely, that § 112(h) of the Clean Air Act provides the only basis for EPA to impose a non-numerical emissions standard and that the 1994 regulations are unlawful because they do not comply with the requirements of § 112(h). Sierra Club mentions § 112(h), see Petr.’s Br. at 24, but its argument that the 1994 regulations are unlawful rests on § 302(k)’s requirement that “emission standards” must regulate air pollutants on a “continuous basis,” id. at 23-24. EPA refers to § 112(h) only to state that it is irrelevant to the question whether its “general duty to minimize” is an enforceable standard satisfying the statutory requirement to regulate sources on a continuous basis. Resp.’s Br. at 33 n. 5. As we have recognized, a passing mention of an otherwise -unbriefed issue does not normally suffice to preserve the issue. United States v. Haldeman, 559 F.2d 31, 78 n. 113 (D.C.Cir.1976).[3]
Though there have been exceptions, we have generally declined to consider issues not briefed by the parties, especially when the issue is not easy or the record is long and complex, cf. United States v. Pryce, 938 F.2d 1343, 1347-48, 1351 (D.C.Cir.1991), when doing so would be unfair to the respondent, Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 284 n. 32 (D.C.Cir.1981), or when the legal issue is particularly important, Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983). Here, the question whether EPA’s interpretation of § 112 is permissible is a difficult one, and both the record and the statute are complex. Here too, EPA has never had a fair opportunity to address the issue.

. The majority opinion makes a factual error when it suggests that the new startup, shutdown, and malfunction regulations have eliminated a prior requirement that EPA approve startup, shutdown, and malfunction plans in the course of its review of Title V permits. Maj. Op. at 1026. In fact, the plans were merely incorporated by reference into Title V permits; there has never been any requirement that EPA review or approve the plans before approving permits. See 66 Fed.Reg. 16,318, 16,326 (2001); see also 40 C.F.R. § 63.6(e)(3)(viii) (1998); 67 Fed.Reg. 16,582, 16,587 (2002).

. The majority opinion does not reach Sierra Club's argument that the recent rules fail to guarantee enforcement of applicable emissions standards and therefore violate Title V of the Clean Air Act.

. The majority attempts to shoehorn its holding into Sierra Club’s "continuous basis” arguments, stating that it reads § 112 and § 302(k) together to "require!] that there must be continuous section 112-compliant standards.” Maj. Op. at 1027. But the discussion of § 302(k)'s "continuous basis” requirement does no work in the majority's legal analysis; without the "continuous basis” requirement, the majority would still hold that EPA’s standards must be "section 112-compliant.” The majority's point is not that EPA has failed to regulate emissions sources on a continuous basis. See. Maj. Op. at 1027 (stating that EPA need not continuously apply a uniform standard). It is instead that the 1994 rule’s "general duty to minimize” does not meet the requirements of § 112(h). Maj. Op. at 1027-28.