Tina C. HOBSON, Plaintiff,

v.

John S. HERRINGTON, Secretary of Energy, Defendant.

Civ. A. No. 83–3056.

United States District Court, District of Columbia.

Jan. 6, 1989.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

Plaintiff is a former employee of the Department of Energy (DOE) who had been a member of the Senior Executive Service (SES). After a reduction in force (RIF) within the DOE, plaintiff lost her job, and she was eventually removed from federal employment. She challenged her removal before the Merit Systems Protection Board (MSPB), where she alleged sex discrimination, prohibited personnel practices, and violations of civil service law and regulations. The hearing examiner (HE) for the MSPB denied her claims and upheld the DOE's actions. Plaintiff then filed this action pursuant to the Civil Service Reform Act of 1978 (the Act), 5 U.S.C. §§ 7702(e)(3) and 7703(b)(1) and (2), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, and the Fifth Amendment. The case is now before the Court on the parties' cross-motions for summary judgment on the MSPB claims, and on plaintiff's motion for summary judgment on her claim for sex discrimination. After carefully considering the motions, the opposition to them, and the record in this case, the Court concludes that defendant's motion should be granted, and that plaintiff's motions should be denied.

The essence of plaintiff's MSPB claims is that the RIF as applied to her was based on personal and political animosity rather than performance. Her three major objections are to the declaration of her position as surplus, the failure to change her performance appraisal, and the failure to place her in another job. Plaintiff, in her motion, states the issue as whether there was sub-stantial evidence for the HE's finding that there was a non-discriminatory explanation for the personnel actions which were taken against her. At argument, however, plaintiff also maintained that even if the individual actions could be justified, they were a pretext for getting rid of her.

The parties agree that "substantial evidence" is the proper standard for reviewing the MSPB claims. Although plaintiff contended in her brief that the decision below should be set aside as contrary to the weight of the evidence, counsel conceded at the argument on the motion that the decision must be upheld if it is supported by substantial evidence. Her claim of sex discrimination will be reviewed *de novo*.

## I.

█ While the Act contemplates that SES employees might be removed, clearly, this is to occur only if they cannot be placed elsewhere in the SES, and not because of political disagreements. 5 U.S.C. § 3595. The goal of the legislation creating the SES is to retain a professional managerial force within the government. Furthermore, although the Act does not entitle a removed SES employee to a government service job at level 15 (GS–15), the DOE's internal regulations provide for reinstatement of removed SES employees to vacant GS jobs *as feasible*. DOE Order 3351.2 at 10.

Plaintiff complains of a number of adverse actions taken against her which she claims were either improper in themselves, or were evidence of an unlawful plan to move her out of the DOE and the SES. Plaintiff's initial transfer is not at issue here, but she offers it as evidence of bias against her. The DOE asserts that it was only a detail, not a transfer, and that it was voluntarily withdrawn. The circumstances surrounding this transfer or detail do suggest that it is probative evidence of bias against her.[1]

---

1. Although the DOE asserts that the detail was never determined to be illegal, the report of the Office of Special Counsel states that it was in violation of the 120 day rule. (*See* Plaintiff's Memorandum, filed October 31, 1985, ex. 4 at 3.) This report is not part of the administrative record.

Plaintiff asserts that she was later transferred to a doomed position at the Office of Conservation and Renewable Energy (CE). The record shows that there had been a previous attempt to make the position an SES position, but that it was thwarted by a hiring freeze. The HE determined that this transfer was not a pretext for setting plaintiff up for a removal.[2] She determined that the transfer was motivated by policy considerations and not personal animus. The record shows that the HE had substantial evidence to support this conclusion.

## II.

Plaintiff also challenges the determination that her position was surplus for the purposes of the RIF. Joseph Tribble, the head of CE, stated that the neutral criteria for the SES RIF as applied to CE were that: (1) there would be no positions for deputies to deputies; and (2) those managing budgets of less than approximately $10 million would be removed.

The DOE argues that these were arbitrary criteria aimed at reaching CE's limit of 26 SES jobs. It argues that the Executive Review Board (ERB) was not bound by this guideline, and that evidence shows that they did their own review. The DOE states that one deputy was kept where the senior position was vacant. The DOE also states that Congress's increase of the weatherization program's budget from zero to 145 million mandated the retention of Mr. Flynn as an SES. DOE argues that the 20% increase in plaintiff's budget did not mandate similar consideration.

The HE accepted these arguments and found that the actions did not evidence bad faith against plaintiff or indicate that plaintiff was treated differently from Flynn. (Opinion at 9.[3]) Plaintiff contends that the HE ignored the retention of the one deputy.

Although the ERB might not have been bound by Tribble's guidelines, it appears that it followed them, and that it labeled all requested jobs as "surplus". Also, when faced with the budget increase for weatherization, the DOE chose to allocate an additional SES position rather than to cut someone else. Clearly, Tribble did not follow his own neutral criteria when it came to plaintiff's position. However, the HE accepted his explanation for failing to do so. She found his criteria to be a "general objective means by which to decide which positions should first be reviewed to see if they were surplus." (Opinion at 9.) Her decision is supported by substantial evidence.

## III.

In conducting the RIF, the DOE used an appraisal for plaintiff which was based upon the application of the standards for her previous position to the one she had been in for six weeks. Although plaintiff had agreed to the rating of "fully satisfactory," she contends that the appraisal was invalid. The essence of plaintiff's argument on this appeal is that since an invalid appraisal was used to determine her status in the RIF competition, DOE should have used her revised appraisal in a new RIF competition. The updated appraisal included an evaluation from one of plaintiff's previous supervisors for part of the time supposedly covered in the original appraisal, and it included John Milhone's rating for the period subsequent to the appraisal. She contends that the failure to use the updated appraisal was improper and in bad faith.

The HE discusses this issue at pages 10–12 of her opinion. Plaintiff contends that the HE misstated her allegations and ignored her claim that the failure to use the updated appraisal was in bad faith. (Plaintiff's Memorandum at 29.) Plaintiff, however, did not argue that point in the

---

**2.** The DOE did not have the authority to remove SES personnel through a RIF when plaintiff was transferred. The Court also notes, however, that it appears that CE was set to be abolished by Fiscal Year 1983. (*See* Plaintiff's Memorandum, Exhibit 4 at 3.)

**3.** The HE's opinion is found at DOE Attachments, Number 3, and at Record, Part I at tab 32.

section of her administrative brief dealing with the appraisal. (Plaintiff's Brief, R. Part 1, tab 31 at 26–35.) She only mentioned the point briefly. (Plaintiff's Brief, R. Part 1, tab 31 at 13.) The thrust of her argument below was that the use of the invalid appraisal in the RIF was improper.

After reviewing the arguments of the parties, the HE found no violations of the procedures required by DOE Order 3351.2. She went on to state that since no bad faith was alleged concerning the creation of the appraisal, the RIF appeal was not the proper forum in which to consider allegations of error in the application of the appraisal system.

There is no question that the appraisal was improper. The Office of Personnel Management (OPM) reached this conclusion after examining certain aspects of the RIF. There is a question whether a proper appraisal would have created a different result. The DOE argued below that either "no rating" was proper, or that pursuant to OPM's study, a presumptive rating of "fully satisfactory" was proper. In either instance, plaintiff would have been in the same retention group. The DOE does not press the "no rating" argument here, but it does contend that it could not have altered the rating after the fact because others who were removed in the RIF would then challenge their ratings. (DOE's Memorandum at 20).

Here, plaintiff does not dispute OPM's conclusion, which is part of the administrative record, that a presumptive rating of "fully satisfactory" would have been proper.[4] Plaintiff had argued below that use of a presumptive appraisal would have meant that her RIF was not based primarily upon her performance, and it thus would have violated 5 U.S.C. § 3595(a). At oral argument in this case she contended instead that an updated rating could have been used as an alternative to a presumptive rating. Since it does not appear that plaintiff has challenged or can challenge the OPM's determination here, that decision provides substantial evidence upon which

the HE could base a finding that the use of the invalid appraisal was harmless.

Furthermore, although plaintiff appears to have a strong argument that her update was not accepted because of bias, there is substantial evidence in the record of a legitimate, non-discriminatory reason for not accepting plaintiff's updated appraisal. J.E. Schulman, the personnel director at the DOE, testified that although an updated appraisal could have been used, their policy was not to accept updates after the RIF had been run because all employees set to be removed would get their supervisors to submit them. (Tr. vol. II at 172–177.)

### IV.

Plaintiff submits that she was qualified for several positions even if her appraisal was correct. These included positions within the SES and at the GS–15 level.

There is no dispute that plaintiff was qualified for the position of Deputy Director of the Office of Equal Opportunity. The issue here is whether the job was a "vacancy" for the purpose of 5 U.S.C. § 3595. The DOE contends that the a decision had been made to leave the position unfilled before plaintiff was removed in the RIF. The DOE states that the only reason why it was subsequently opened was that the director announced his retirement in June 1983, and the agency determined that it would be beneficial to hire his successor as a deputy so she could train under the director. Plaintiff was separated in April 1983. The DOE argues that it is ludicrous to contend that the timing of the director's retirement was connected to plaintiff's separation.

Plaintiff asserts that the position was available and could have been filled. Plaintiff challenges the HE's determination that this was a "non bona fide SES position." (*See* Opinion at 15.) Plaintiff also points to the "reopening" of the position as evidence of bias.

---

**4.** It is doubtful that this Court would have jurisdiction to hear a challenge to OPM's determination in this case. OPM is not even a party to the action.

Once again, the HE found in favor of the DOE, and she determined that the timing of the opening of the job was irrelevant. She ruled that the DOE was not obligated to place plaintiff in the job. She found no evidence of bad faith in the agency's decision on March 8, 1982 to take the EEO job off of the February 12, 1982 list of positions which "appear" to be vacant and available. Of the 49 positions on the February list, the EEO position is the only one on the March list with a line through it. (*See* DOE Attachments, Number 4.) The questions here are whether the position was abolished; if not, whether the agency had the discretion not to fill an existing position during a RIF; and if so, whether the HE's finding of no bad faith was based upon substantial evidence?

The agency's personnel director testified that the position was not abolished and that it was vacant, but that the agency decided not to fill it. (Schulman testimony, Tr. vol. 2 at 169.) His subordinate stated that the job was abolished after the February list was reviewed. (Golis testimony, Tr. vol. 2 at 69–71).

One problem in reviewing this aspect of the HE's order is that she did not discuss the evidence relating to whether the position had been abolished or was merely being left unfilled. Her conclusion appears to be that the decision to leave the position unfilled was tantamount to abolishing it. Thus, the HE states that plaintiff mischaracterized Schulman's testimony by asserting that he testified that the position was a *bona fide* vacancy, since he had in fact testified that a decision was made to leave the job unfilled. The HE did not, however, address the unequivocal testimony of Schulman to the effect that the position, although not utilized, was not abolished, and it was vacant. Nor did she discuss or cite to the testimony of Schulman's subordinate, Joan Golis, which would support the conclusion that the position was abolished.

In addition to the Schulman testimony, plaintiff's argument that the position could have been filled was supported by her expert's testimony that the technical mechanism for abolishing a position is a "form

52." (Tr. vol. 3 at 110). Golis could not point to documents indicating a formal termination of the EEO position. (Tr. vol. 2 at 69–71.)

In light of Schulman's testimony that the position was not abolished, it seems clear that the DOE could have filled the position if it chose to, and that any conclusion to the contrary was not based upon substantial evidence.

The statute clearly acts an entitlement to a *vacant* SES position for which the employee is qualified. 5 U.S.C. § 3595(b)(3). There is no dispute that plaintiff was qualified for the position, or that the agency had not declared the position surplus. Assuming that the position was not abolished, the question is whether a vacant position includes a job which the agency has decided not to fill, but has not abolished. Plaintiff's expert testified that a vacancy is an established position that is not filled. If, on the other hand, the position is abolished, it cannot be vacant. (Davis testimony, Tr. vol. III at 110). Under plaintiff's interpretation, the statute overrides the agency's discretion as to when to fill a position by giving an SES employee who has been removed in a RIF an entitlement to a vacant position for which she is qualified. 5 U.S.C. § 3595.

The HE interpreted the term "vacancy" to mean an established position which the agency seeks to fill. She based her ruling on the proposition that "agency management generally may decide how to use their SES allocations, when to fill them and when to abolish them." (*Opinion* at 15.) This appears to be a reasonable, common-sense interpretation. It is questionable whether Congress would have intended that an agency be required to fill a position which it determined that it did not need. Plaintiff's interpretation is based on the technical, but somewhat fictional existence of a position which the DOE could have abolished.

Plaintiff's evidence with regard to the issue of whether she did not get the job because of personal bias is all circumstantial. In finding no discriminatory motive for leaving the position vacant, the HE

relied on the evidence that management had determined that the position was not necessary at the SES level. She also pointed out the lack of direct evidence of bad faith. It was within the HE's discretion to credit the explanation for leaving the position unfilled, and that explanation, together with the lack of direct evidence, supported the HE's determination.

## V.

The DOE argues that the position of Assistant Manager of the Chicago office is a technical job for which plaintiff is not qualified. The HE, relying on the job description and plaintiff's application for federal employment[5], agreed. Plaintiff contends that Golis changed the job description on the night after her testimony started to reflect technical requirements. Golis had added a note to the qualifications statement for the job, which was based on the more detailed job description. The HE specifically stated, however, that she did not rely on any notes added by Golis to the job description. She thoroughly reviewed plaintiff's experience in concluding that DOE was correct in finding plaintiff unqualified for the job. She concentrated on plaintiff's lack of experience in administering and developing accounting systems, or working with nuclear materials. (Opinion at 13.) The record shows substantial evidence for the conclusion that the position had requirements which plaintiff could not meet.

## VI.

The DOE asserts, and plaintiff does not dispute, that plaintiff had no statutory right to a GS–15 job. Plaintiff asserts that agency regulations contemplate placement at an available GS–15 job. DOE also argues that plaintiff was not qualified for any of the GS–15 jobs in which she contends she should have been placed.

The HE ruled that plaintiff was not entitled to a GS–15 job. The Act creates no such entitlement, but the regulations provide that an SES employee removed in a RIF will be placed in a GS–15 job where

feasible. *See* DOE Order 3351.2 at 10 para. (6)(d). While this might not be an entitlement, the Order states an affirmative duty to offer reinstatement at the GS level if DOE determines that it is feasible to do so. Also, while the feasibility determination should be accorded a good deal of deference since it is not even required by the statute, DOE should apply its "feasibility" standard in a non-discriminatory fashion. Plaintiff argues that it was feasible to place her in three GS 15 positions.

Golis testified that she took no action to place plaintiff in a GS–15 position, and that she believed no action was necessary. (Tr. vol II at 105.) Thus, Golis, as the person responsible for placing plaintiff, admittedly violated the DOE's Order. Tribble also testified that he took no such action, even after Representative Ottinger suggested that he do so. (Tr. vol I at 136.) The DOE did consider plaintiff for the first two positions discussed below, for which plaintiff's immediate and secondary supervisors had recommended her. Plaintiff lists a third position for which she contends that she was qualified.

Plaintiff asserts that she should have been placed in her old position as Director of the Building Equipment Division. Her primary evidence consisted of testimony by her supervisor that she was qualified for the job, and that she had successfully supervised engineers in the past, and that the job did not require an engineering background. The HE, however, fully credited Tribble's decision to change the job description for that position, and to seek an engineer to fill it. She emphasized that he is an engineer, and that the evidence showed that he intended to move the division in a more technical direction. Furthermore, even Milhone testified that the position could appropriately be put in the engineering series, although he added that plaintiff had performed capably. (Tr. vol III at 10.) Once again, although plaintiff submitted substantial evidence in her favor regarding both her qualifications and the bias against her, the DOE also submitted substantial

5. Standard Form 171.

evidence which could form the basis for the HE's conclusion against her.

Plaintiff also asserts that she was qualified to be the Director of the Building Services Division. The HE found that plaintiff qualified for this job, but that it had not been determined how or if it would be filled. (Opinion at 17.) She found that because of organizational unrest, no efforts were made to fill the position at the time plaintiff could have been considered for it. The HE relied on testimony which provided substantial evidence for the agency's determination that it was not feasible to offer the position to plaintiff.

Finally, plaintiff asserts that she could have been made the Director of Federal and Community Programs. Little attention has been paid to this position, either in the briefs, the testimony or the opinion. Milhone testified that plaintiff would be qualified for this position, although he stated that it was an 801 series (technical) position. (Tr. vol III at 115.) Of the three GS–15 positions, this was the one for which he did not recommend her. Linda Gregory testified that this was one of the positions which Tribble wanted to put on hold, pending further reorganization, and she also mentioned his preference for engineers. (Tr. vol I at 16.) Plaintiff has not established that she should have gotten this job. Based upon Gregory's testimony, it appears that DOE did not wish to fill the position, and its decision not to do so should be upheld.

Although there was substantial evidence of bias against plaintiff with regard to her civil service claims, the HE chose to credit the DOE's testimony in every instance, and she found a valid reason for each action by the agency. While this Court might have reached a different result, it is not to substitute its judgment for the HE's where there is substantial evidence to support the HE's decision. Given the limited standard of review, the HE's decision must be upheld since it is supported by evidence which can support a reasonable decision.

## VII.

■ Plaintiff also filed an administrative complaint with the Office of Special Counsel (OSC) challenging the use of her appraisal. She contends that she requested and should have been given access to the report of the OSC before her MSPB hearing took place. She states that the investigation was completed six months before the report came out, and that the report was withheld because it contained material damaging to the DOE. (*See, e.g.,* Plaintiff's Memo., Exhibit 4 at 7.) Plaintiff urges that because of this, the HE's decision should be set aside, and not remanded, pending trial of her claim of sex discrimination.

Proceedings before the OSC are separate from MSPB claims, and judicial review is "limited, at most, to ensuring compliance with the statutory requirement that the OSC perform an adequate inquiry." *Carducci v. Regan,* 714 F.2d 171, 175 (D.C.Cir. 1983). The adequacy of the OSC inquiry is not at issue here. Given the independence of the OSC action, and the lack of conclusive proof in the report, the MSPB decision should not be set aside or remanded for failure to produce the report.

## VIII.

■ In moving for summary judgment on her claim of sex discrimination, plaintiff asserts that the fact that she was the only person separated from government service in the RIF entitles her to judgment as a matter of law. Even if this fact is sufficient to prove plaintiff's prima facie case, the DOE has raised material issues of fact as to whether there were legitimate, non-discriminatory reasons for this fact. Therefore, plaintiff's motion must be denied.

## IX.

The DOE asserts, and plaintiff does not dispute, that the court has no jurisdiction to hear her constitutional claim, since plaintiff is limited to her Title VII remedies for discrimination. (DOE's Memorandum at 11 n. 12.) Plaintiff has given no indication that she intends to pursue this claim. Therefore, the DOE's motion will be treated as conceded.

Therefore, in view of the above, it is hereby

ORDERED that plaintiff's motions for summary judgment are denied; and it is further

ORDERED that defendant's motion for partial summary judgment is granted; and it is further

ORDERED that claims pursuant to 5 U.S.C. § 7703(c), 5 U.S.C. § 2302, and the Fifth Amendment to the United States Constitution are dismissed.