914 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ira T. MACDONALD, Plaintiff-Appellant,
v.
Charles Z. WICK, Defendant-Appellee.
 No. 89-3771.
 United States Court of Appeals, Sixth Circuit.
 Sept. 13, 1990.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and SILER, Chief District Judge.*
 PER CURIAM.
 
 
 1
 In an action seeking a court order to compel a government agency to employ him, plaintiff-appellant Ira T. MacDonald appeals the district court's grant of defendant's motion to dismiss. For the following reasons, we affirm.
 
 
 2
 * This case stems from MacDonald's lengthy efforts to obtain employment as an electronics technician with the Voice of America (VOA) of the United States Information Agency (USIA). In December 1984, USIA requested a list of eligibles from the Office of Personnel Management (OPM) in Dayton, Ohio, to fill an electronics technician opening at the VOA's Bethany Relay Station. USIA received a list of three eligibles, including MacDonald, in February 1985. As a 70% disabled veteran MacDonald was a "preference eligible," but questions arose as to his medical fitness for the position and an inquiry ensued. MacDonald then brought an action for a writ of mandamus in the U.S. District Court for the District of Columbia. In April 1985, USIA and MacDonald entered into a "Stipulation of Settlement and Dismissal" (Settlement Agreement) in which USIA agreed to expunge from its files copies of certain Air Force medical records. The Settlement Agreement further stated that "[t]he USIA shall give due consideration to any pending or future applications for employment of the plaintiff[.]" J.App. at 76 (emphasis added). The Agreement also stated that "USIA is neither extending an offer of employment at this time, nor guaranteeing that an offer of employment will be made in the future." J.App. at 109.
 
 
 3
 USIA subsequently discovered from the Veterans Administration that MacDonald's 70% disability was schizophrenia, paranoid type. VOA then advised OPM on April 11, 1986 of its objections to MacDonald on grounds of his being medically unfit for service. VOA provided OPM with medical documents and the opinion of VOA's medical consultant. After reviewing this record, however, OPM reached a different conclusion. By letter dated October 10, 1986, OPM informed MacDonald of its determination that he was not medically disqualified and that he was suitable for the position, thereby overruling USIA's objections. VOA then informed OPM that it would appeal OPM's determination pursuant to procedures outlined in the Federal Personnel Manual.
 
 
 4
 On October 24, 1986, plaintiff filed suit in the District Court for the Southern District of Ohio, Judge Walter Rice presiding (MacDonald I ). Through his "Complaint in Mandamus," MacDonald sought to compel USIA Director Charles Wick to appoint him to his desired post.
 
 
 5
 On February 9, 1987, VOA formally requested OPM to reconsider its determination regarding MacDonald's eligibility. OPM then submitted the case to the Armed Forces Institute of Pathology (AFIP), which federal agencies regularly consult to resolve complex medical issues.
 
 
 6
 On March 27, 1987, the district court, in part, granted defendant Wick's motion to dismiss. The district court found that it had no jurisdiction over MacDonald's claims under 5 U.S.C. Sec. 3318, which describes OPM appointment procedures, because jurisdiction for disputes over personnel practices was held by the Office of Special Counsel (OSC) of the Merit Systems Protection Board (the Board). Appeals from decisions of the Board to U.S. district courts may only be had in cases alleging Title VII claims, age discrimination, or Fair Labor Standards Act violations. The district court also found that it had no jurisdiction under 28 U.S.C. Sec. 1361, the mandamus statute, reasoning as follows:
 
 
 7
 [T]he mandamus statute only gives the Court power to protect its prospective jurisdiction. Thus, because it could never ultimately have jurisdiction (in other words, it has no prospective jurisdiction) over Plaintiff's claim under 5 U.S.C. Sec. 3318 or federal personnel regulations (since Plaintiff's Complaint alleges no facts under which he could bring a Title VII, age discrimination or Fair Labor Standards Act claim) the Court has no jurisdiction under 28 U.S.C. Sec. 1361. Accordingly, the Court must find that it has no jurisdiction over Plaintiff's claims brought under 5 U.S.C. Sec. 3318 and the federal personnel regulations, and accordingly must grant Defendant's Motion to Dismiss on those claims.
 
 
 8
 J.App. at 104-05 (MacDonald I ).
 
 
 9
 The Court accepted jurisdiction over MacDonald's contract claim based on the "due consideration" clause of the Settlement Agreement. Jurisdiction was based on 28 U.S.C. Sec. 1346(a)(2), which gives district courts jurisdiction over civil actions or claims against the United States not exceeding $10,000.00. The Court then granted MacDonald twenty days to file a reply brief to Wick's summary judgment motion on this issue. On May 23, 1987, the district court granted defendant's motion for summary judgment on the Settlement Agreement issue. The court found that:
 
 
 10
 Quite simply, the agreement to give Plaintiff's future applications for employment "due consideration" means nothing more than that he will be treated like every other applicant for the particular position. Plaintiff has not made any allegations or offered any Rule 56(e) evidentiary materials that would indicate he has been treated differently than other similarly situated applicants for the position he seeks. Accordingly, the Court must find that no genuine issue of material fact exists as to whether the settlement agreement was breached by the Defendant.
 
 
 11
 J.App. at 109 (MacDonald I ).
 
 
 12
 On June 1, 1987, OPM reversed its earlier determination and informed MacDonald that, based on the AFIP report, he was not medically qualified for the electronics technician position.
 
 
 13
 MacDonald filed the suit which forms the basis of this appeal on June 4, 1987 against Richard Wood of OPM and Charles Wick, Director of USIA. MacDonald charged Wood with violations of 5 U.S.C. Secs. 3312, 3318, which control OPM selection procedures, by not notifying him of the reason for failing to appoint him and by delegating authority to outside medical consultants. J.App. at 5. MacDonald also charged USIA Director Wick with violating the 1985 Settlement Agreement.[1] MacDonald sought a court order compelling defendants to appoint him as an electronics technician at the VOA relay station in Bethany, Ohio.
 
 
 14
 On December 20, 1988, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. Treating it as a motion to dismiss, the district court granted the motion on August 4, 1989. This timely appeal followed.
 
 II
 
 15
 Our review of a district court's grant of a motion to dismiss is de novo. We assume that the factual allegations in the complaint are true. "The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Windsor v. The Tennessean, 719 F.2d 155, 159 (6th Cir.1983), cert denied, 469 U.S. 826 (1984).
 
 
 16
 The district court held that neither the mandamus statute (28 U.S.C. Sec. 1361) nor the substantive provisions under which MacDonald asserts his claim (5 U.S.C. Secs. 3312, 3318) provide a jurisdictional basis. We agree. The mandamus statute does not by itself provide subject matter jurisdiction. MacDonald must therefore demonstrate that his denial of employment by a government agency is within the district court's jurisdiction. Baker Perkins, Inc. v. Werner & Pfleiderer Corp., 710 F.2d 1561, 1565 (Fed.Cir.1983); Leonard v. Orr, 590 F.Supp. 474, 478 (S.D.Ohio 1984). The district court found, and we agree, that it did not have jurisdiction because of MacDonald's failure to exhaust his administrative appeals.
 
 
 17
 Before the enactment of the Civil Service Reform Act of 1978 (CSRA), codified as amended in scattered sections of Title 5 of the U.S.Code, the Administrative Procedure Act (APA), 5 U.S.C. Sec. 701 et seq., permitted direct review by the district courts of agency personnel actions. In Carducci v. Regan, 714 F.2d 171 (D.C.Cir.1983), Judge Scalia addressed the issue of the effect of the CSRA on the judicial review provisions of the APA. Carducci held that, under the CSRA, there could be no direct review in a federal district court of nonconstitutional claims regarding agency personnel decisions. Carducci, 714 F.2d at 172 (emphasis added). The D.C. Circuit in Carducci distinguished between "major personnel actions", requiring judicial review after exhaustion of administrative remedies, and "minor personnel actions":
 
 
 18
 [We] believe the statute establishes: (1) for major personnel actions specified in the Statute ("adverse actions"), direct judicial review after extensive prior administrative proceedings; (2) for specified minor personnel actions infected by particularly heinous motivations or disregard of law ("prohibited personnel practices"), review by the Office of Special Counsel, with judicial scrutiny "limited, at most, to insuring compliance with the statutory requirement that the OSC perform an adequate inquiry," (citation omitted); and (3) for the specified minor personnel actions not so infected, and for all other minor personnel actions, review by neither OSC nor the courts.
 
 
 19
 Id. at 175.
 
 
 20
 Whether, under Carducci, MacDonald's treatment by OPM and USIA is deemed to be a major personnel action or a minor personnel action "infected by particularly heinous motivations", we think that the district court correctly found that it did not have subject matter jurisdiction in this case. The CSRA contemplates a primary role for the OSC in the resolution of agency personnel disputes. MacDonald's failure to exhaust his administrative remedies via the Office of Special Counsel of the Merit System Protection Board before resorting to the courts means that no federal court can now take jurisdiction. Moreover, because MacDonald's claim does not involve a Title VII or age discrimination issue, any final resolution of his claim by the Board would be reviewable only in the Federal Circuit. 5 U.S.C. Sec. 7703(b)(1).
 
 
 21
 MacDonald claims that he has exhausted all appeals by citing to an August 25, 1989 letter from the OPM stating that there can be no administrative appeal of his medical eligibility determination. Determination of MacDonald's medical eligibility, however, does not affect his ability to appeal an alleged prohibited personnel practice to the Special Counsel.
 
 
 22
 MacDonald also resurrects his argument that the OPM's disposition of his application was a violation of the "due consideration" clause of the Settlement Agreement. Given our conclusion that the motion to dismiss should be affirmed on jurisdictional grounds, we decline to address the argument. We note, however, the district court's statement that it is "inclined to conclude that the decision set forth in the June 1, 1987 letter does reflect due consideration." J.App. at 120 n. 1.
 
 III
 
 23
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 24
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 25
 I agree that the district court had no jurisdiction over Mr. MacDonald's claims under 5 U.S.C. Secs. 3312 and 3318 or 28 U.S.C. Sec. 1361, but that under 28 U.S.C. Sec. 1346(a)(2) the court could entertain a contract claim against USIA for not more than $10,000 based on that agency's alleged violation of the "due consideration" commitment in the 1985 settlement agreement. I am uncertain as to whether Mr. MacDonald has any unexhausted administrative remedies at this point, the jurisdiction of the Merit Systems Protection Board's Office of Special Counsel being limited, as I understand it, to consideration of allegations of prohibited personnel practices, but I would affirm the judgment of the district court without reaching that issue.
 
 
 26
 The district court entered a final judgment on May 29, 1987, in case number C-3-86-526 ("MacDonald I "), holding that USIA had committed no breach of the 1985 settlement agreement. That decision is res adjudicata as far as the parties to MacDonald I are concerned, no appeal having been taken. Mr. Wood was not a party to MacDonald I, but even if the district court had jurisdiction over the claim against him, which it does not, he would be entitled to invoke the doctrine of collateral estoppel against MacDonald. We must take it as given, therefore, that as of May 29, 1987, USIA had been guilty of no violation of the settlement agreement.
 
 
 27
 It may be true that Mr. MacDonald would not be estopped from claiming, in a subsequent lawsuit, that there had been a subsequent breach of the agreement, but the only post-May 29 development of which he complains is OPM's June 1 decision that he was not medically qualified for the position he sought. Mr. MacDonald has not demonstrated the existence of any disputed issue of material fact concerning a post-May 29 breach of the settlement agreement by USIA, the only agency as to which the district court had subject matter jurisdiction, and I think the agency was entitled to summary judgment on that ground.
 
 
 
 *
 The Honorable Eugene Siler, Jr., Chief District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 MacDonald later amended his complaint so that Wick was the sole named defendant