IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
April 6, 2022 Session

## STATE OF TENNESSEE v. LYNN FRANK BRISTOL

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Coffee County**
**No. 42118F   Vanessa Jackson, Judge**

_____

### No. M2019-00531-SC-R11-CD

_____

In this appeal, we clarify the scope of an appellate court's limited discretionary authority to consider unpreserved and unpresented issues. Appellee Lynn Frank Bristol was convicted on two counts of aggravated sexual battery. Bristol appealed his convictions to the Court of Criminal Appeals. That court determined Bristol was not entitled to relief on the issues presented, but it reversed his convictions and remanded the case for a new trial based on a supposed problem with the written jury instructions that Bristol had not raised, that no party had an opportunity to address, and that turned out to be nothing more than a clerical error by the trial court clerk's office. Because the Court of Criminal Appeals abused its discretion by granting relief on an unpreserved and unpresented issue without giving the parties notice and an opportunity to be heard on the matter, we reverse the Court of Criminal Appeals' decision on the jury-instruction issue and reinstate Bristol's convictions.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed**

SARAH K. CAMPBELL, J., delivered the opinion of the court, in which ROGER A. PAGE, C.J., and SHARON G. LEE, JEFFREY S. BIVINS, and HOLLY KIRBY, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Benjamin A. Ball, Senior Assistant Attorney General; Sophia S. Lee, Senior Assistant Attorney General; and Craig Northcott, District Attorney General, for the appellant, State of Tennessee.

Thomas E. Parkerson, Murfreesboro, Tennessee, for the appellee, Lynn Frank Bristol.

**OPINION**

**I.**

In 2015, a Coffee County grand jury returned a two-count indictment against Lynn Frank Bristol charging him with one count of aggravated sexual battery, Tenn. Code Ann. § 39-13-504 (2014), and one count of child rape, Tenn. Code Ann. § 39-13-522 (2014). The victim was Bristol's minor stepdaughter. The proof at trial showed that, when his stepdaughter was ten years old, Bristol told her to remove her pants and underwear and "used his fingers to spread" her labia. When she was twelve years old, Bristol rubbed her "private area" repeatedly while giving her a massage.

At the close of evidence, the trial court delivered its oral jury charge. Counsel for Bristol and the State, who had an opportunity to review and propose changes to the written jury instructions, accepted and did not object to that charge. The jury convicted Bristol of aggravated sexual battery in count one and the lesser-included offense of aggravated sexual battery in count two. The trial court sentenced Bristol to ten years for each conviction and directed that the sentences be served consecutively for a total effective sentence of twenty years. Bristol moved for a new trial on various grounds, which notably did not include the ground on which the Court of Criminal Appeals ultimately granted relief—that the written jury instructions omitted certain critical instructions that were included in the oral jury charge. The trial court denied Bristol's motion.

Bristol appealed his convictions to the Court of Criminal Appeals, raising various issues for review. *State v. Bristol*, No. M2019-00531-CCA-R3-CD, 2021 WL 1697914, at *4 (Tenn. Crim. App. Apr. 29, 2021), *perm. app. granted* (Tenn. Nov. 19, 2021).[1] Again, he failed to raise any argument about a discrepancy between the trial court's written and oral jury instructions.

The Court of Criminal Appeals heard argument in December 2020. Neither the court nor the parties raised the jury-instruction issue. Two months later, the appellate court ordered the trial court clerk to supplement the appellate record with transcripts of "the jury charge, . . . the return of the jury's verdict, . . . closing arguments," and "any discussion regarding election of offense[s]." The order stated that the requested supplementation was "necessary and essential for a complete review of the issues raised on appeal."

In April 2021, after the trial court supplemented the record, the Court of Criminal Appeals issued its opinion. The court held that Bristol was not entitled to relief on the issues

---

[1] Bristol argued that the trial court erred by allowing the State to amend the indictment, denying his motion for a continuance, failing to give an enhanced unanimity instruction, finding the evidence sufficient to support the convictions, and imposing excessive sentences. Those issues are not before this Court.

he presented. Even so, the court reversed the trial court's judgments and remanded the case for a new trial. It did so by finding plain error in the trial court's written jury instructions, notwithstanding that Bristol had not raised that issue and the parties had received no notice that the court planned to consider that issue, let alone an opportunity to address it.

The court found plain error based on a purported discrepancy between the written and oral jury instructions. The court explained that certain instructions and definitions were "noticeably absent" from the written jury instructions contained in the original appellate record. *Bristol*, 2021 WL 1697914, at *12. That absence had prompted the court to order the trial court to supplement the record with a transcript of the oral jury charge. When the court compared the transcript of the oral jury charge in the supplemental record with the written jury instructions in the original appellate record, it found that the two were "vastly different and d[id] not track one another." *Id.* at *13. For example, while the oral jury instructions included definitions of "rape of a child, attempted rape of a child, attempted aggravated sexual battery, attempted sexual battery, sexual battery, child abuse, or neglect," the record lacked "any evidence that the trial court submitted a written definition" of those terms. *Id.*

The State timely petitioned for rehearing. The petition explained that the written jury instructions included in the original appellate record apparently "omitted 16 consecutive pages" and that these omitted pages contained the purportedly missing instructions on which the court based its plain-error determination. The State attached to its petition a copy of the written jury instructions it had obtained from the trial court clerk's file, which included the missing instructions. The State requested that the Court of Criminal Appeals remand the case to the trial court to determine whether the written jury instructions contained in the original appellate record accurately reflected those actually submitted to the jury at trial and, if not, to supplement the appellate record accordingly.

The Court of Criminal Appeals directed Bristol to respond to the State's rehearing petition. Bristol acknowledged that the trial court's oral jury charge was "similar" to the written jury instructions in the trial court clerk's file, but he argued that the trial court's certification of the original appellate record conclusively settled any discrepancy between the original appellate record and the trial court clerk's file.

A few days after receiving Bristol's response, the Court of Criminal Appeals issued an order acknowledging "differences regarding whether the record accurately discloses what occurred in the trial court" and "direct[ing] the trial court, pursuant to Tennessee Rule of Appellate Procedure 24(e), to prepare a supplemental record consisting of the entire

written jury charge submitted to the jury."[2] The trial court clerk then certified and submitted a second supplemental record containing the same version of the written jury instructions that was attached to the State's rehearing petition.

The Court of Criminal Appeals denied the State's rehearing petition, reasoning that this second supplemental record certified by the trial court *clerk* did "not reflect that *the trial court* ha[d] settled the differences regarding the accuracy [of the written jury instructions] contained in the record." Because the trial court had provided "no explanation for the differences" between the written instructions included in the second supplemental record and those in the original appellate record, the Court of Criminal Appeals concluded that the State had failed to show that its earlier opinion "incorrectly state[d] the material facts established by the evidence and set forth in the record," as required to justify rehearing under Tennessee Rule of Appellate Procedure 39(a).

The State sought permission to appeal to this Court. We granted review and asked the trial court to clarify which version of the written jury instructions accurately reflected those provided to the jury at trial. The trial court explained that the written jury instructions transmitted with the original appellate record were incorrect due to a copying error and that the instructions contained in the second supplemental record accurately reflected the written instructions provided to the jury.

II.

The State contends that the Court of Criminal Appeals erred by granting relief on an unpreserved and unpresented issue without giving the parties fair notice and an opportunity to be heard on that issue. As explained below, an appellate court has limited discretionary authority to review unpreserved and unpresented issues. We thus review the Court of Criminal Appeals' consideration of the jury-instruction issue for abuse of discretion. A court abuses its discretion when it "strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *State v. McCaleb*, 582 S.W.3d 179, 186 (Tenn. 2019) (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

We begin our analysis by reiterating the general principles that ordinarily limit appellate review to issues that a party preserves below and presents on appeal. We then discuss the scope of an appellate court's discretionary authority to consider unpreserved

---

[2] Tennessee Rule of Appellate Procedure 24(e) provides that "[i]f any matter properly includable is omitted from the record, is improperly included, or is misstated therein, the record may be corrected or modified to conform to the truth." Tenn. R. App. P. 24(e). If there are "differences regarding whether the record accurately discloses what occurred in the trial court," those differences "shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court." *Id.* "Absent extraordinary circumstances, the determination of the trial court is conclusive." *Id.*

and unpresented issues and conclude that the Court of Criminal Appeals abused its discretion by considering the jury-instruction issue without giving the parties notice and an opportunity to be heard. And because the current appellate record forecloses any argument that the written jury instructions constituted plain error, we reverse the Court of Criminal Appeals' judgment and reinstate Bristol's convictions.

## A.

We start by reiterating two general principles of appellate review that, together, ordinarily constrain an appellate court's authority to consideration of issues that were both preserved in the trial court and presented on appeal. And we explain how each of those principles furthers several core values of our judicial system.

### i.

*First*, an appellate court's authority "generally will extend only to those issues presented for review." Tenn. R. App. P. 13(b); *see also Hodge v. Craig*, 382 S.W.3d 325, 333–34 (Tenn. 2012) (similar); *State v. Harbison*, 539 S.W.3d 149, 165 (Tenn. 2018) ("An appellate court may decline to consider issues that a party failed to raise properly."). This "principle of party presentation" is a defining feature of our adversarial justice system. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). It rests on the premise that the parties "know what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *Id.* (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)). In our adversarial system, the judicial role is not "to research or construct a litigant's case or arguments for him or her," *Sneed v. Bd. Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010), but rather to serve as "arbiters of legal questions presented and argued by the parties before them," *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.).

The party-presentation principle helps preserve several fundamental values of our judicial system. It promotes impartiality by ensuring that courts retain the passive "role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). A decision maker's passivity, or "detachment," helps to ensure even-handed adjudication and preserves litigant and public confidence in the impartiality of the judiciary. Amanda Frost, *The Limits of Advocacy*, 59 Duke L.J. 447, 460–61 (2009) (quoting Stephan Landsman, *Readings on Adversarial Justice: The American Approach to Adjudication* 2 (1988)). By contrast, a decision maker that takes a more active or inquisitorial role may be "perceived as partisan rather than neutral." Adam A. Milani & Michael R. Smith, *Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts*, 69 Tenn. L. Rev. 245, 279 (2002) (quoting Landsman, *supra*, at 2).

Limiting review to the issues presented by the parties promotes fairness by ensuring that litigants have a meaningful opportunity to participate in the adjudicative process. As one scholar has observed, deciding cases "outside the framework of the argument" renders "all that was discussed or proved at the hearing irrelevant" and the parties' participation in the decision meaningless, contributing to a negative perception of our judicial system. Lon L. Fuller, *The Forms and Limits of Adjudication*, 92 Harv. L. Rev. 353, 388 (1978) (characterizing the adjudicative process under such circumstances as "a sham").

The party-presentation principle also helps preserve the separation of powers. "Courts are essentially passive instruments of government." *Sineneng-Smith*, 140 S. Ct. at 1579 (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). They do not "sit as self-directed boards of legal inquiry and research," *State v. Minor*, 546 S.W.3d 59, 66 (Tenn. 2018) (quoting *Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 148 n.10 (2011)), "sally[ing] forth each day looking for wrongs to right," *Samuels*, 808 F.2d at 1301. A court that transgresses the bounds of the party-framed controversy may be perceived as setting its own agenda and exercising political, rather than judicial, authority. *See* Frost, *supra*, at 481; Barry A. Miller, *Sua Sponte Appellate Rulings: When Courts Deprive Litigants of an Opportunity to Be Heard*, 39 San Diego L. Rev. 1253, 1260 (2002); Milani & Smith, *supra*, at 280–81. The party-presentation principle helps reduce the risk that judges will exercise power more appropriately reserved for the political branches.

Restricting review to presented issues has yet another important benefit: it aids the judiciary in its truthfinding function. The party-presentation principle "promotes careful and correct decision making" by "ensur[ing] that the opposing party has an opportunity to reflect upon and respond in writing to the arguments that his adversary is raising." *Hamilton v. Southland Christian Sch.*, 680 F.3d 1316, 1319 (11th Cir. 2012). A central tenet of adversarialism is that "self-interested adversaries will uncover and present more useful information and arguments to the decision maker than would be developed by the judicial officer in an inquisitorial system." Milani & Smith, *supra*, at 282 & n.205; *see also Penson v. Ohio*, 488 U.S. 75, 84 (1988) ("Th[e] system is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question." (cleaned up)); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 28 (1981) ("[O]ur adversary system presupposes [that] accurate and just results are most likely to be obtained through the equal contest of opposed interests . . . ."); *Mackey v. Montrym*, 443 U.S. 1, 13 (1979) ("[O]ur legal tradition regards the adversary process as the best means of ascertaining truth and minimizing the risk of error . . . ."). To be sure, "we are not precluded from supplementing the contentions of counsel through our own deliberation and research." *Carducci*, 714 F.2d at 177. But abandoning the party-presentation principle altogether "deprive[s] us in substantial measure of that assistance of counsel which the system assumes," *id.*, and reduces confidence in a court's ultimate decision.

ii.

*Second*, an appellate court's jurisdiction is "appellate only." Tenn. Const. art. VI, § 2;[3] Tenn. Code Ann. § 16-5-108(a) (2021); *see also Peck v. Tanner*, 181 S.W.3d 262, 265–66 (Tenn. 2005); *Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984); *State v. Comer*, 278 S.W.3d 758, 761 (Tenn. Crim. App. 2008). It extends to those issues that "ha[ve] been formulated and passed upon in some inferior tribunal." *Fine v. Lawless*, 205 S.W. 124, 124 (Tenn. 1918); *see also Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("[W]e are limited in authority to the adjudication of issues that are presented and decided in the trial courts."). Accordingly, "[i]t has long been the general rule that questions not raised in the trial court will not be entertained on appeal." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983); *see also Harbison*, 539 S.W.3d at 164 ("Grounds not raised in a motion for new trial are waived for purposes of appeal."); *Hodge*, 382 S.W.3d at 333–34 ("Subject to the exceptions in Tenn. R. App. P. 13(b), issues are properly raised on appeal to this Court when they have been raised and preserved at trial and, when appropriate, in the intermediate appellate courts and when they have been presented in the manner prescribed by Tenn. R. App. P. 27." (footnote omitted)); Tenn. R. App. P. 3, adv. comm'n cmt., subdiv. (e) ("Failure to present an issue to the trial court, therefore, will typically not merit appellate relief.").

Like the party-presentation principle, preservation requirements further values fundamental to our justice system. They promote fairness, accuracy, and finality by "ensur[ing] that the [parties] are afforded an opportunity to develop fully their opposing positions on an issue," *Minor*, 546 S.W.3d at 65, and "encourag[ing] all trial participants to seek a fair and accurate trial the first time around," *United States v. Young*, 470 U.S. 1, 15 (1985) (citation and internal quotation marks omitted); *see also Puckett v. United States*, 556 U.S. 129, 134 (2009). As the Connecticut Supreme Court has explained:

> [T]o permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court or the opposing party to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party.

*Blumberg Assocs. Worldwide v. Brown & Brown of Conn.*, 84 A.3d 840, 856 (Conn. 2014).

Issue-preservation requirements promote efficiency and judicial economy by "enabl[ing] a trial court to avoid or rectify an error before a judgment becomes final" and "fostering the expeditious avoidance or correction of errors before their full impact is

---

[3] The Tennessee Constitution also gives this Court certain "other jurisdiction," Tenn. Const. art. VI, § 2, that is not relevant here. *See State ex rel. Conner v. Herbert*, 154 S.W. 957, 963 (Tenn. 1913) (discussing this "other jurisdiction").

realized." *Minor*, 546 S.W.3d at 65; *see also State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020). In this way, preservation requirements may obviate altogether the need for appellate review. *Minor*, 546 S.W.3d at 65. Preservation requirements also further efficiency and judicial economy by ensuring that trial and appellate courts perform the roles for which they are best suited. The trial court is "ordinarily in the best position to determine the relevant facts and adjudicate the dispute," *Puckett*, 556 U.S. at 134, while an appellate court reviews the trial court's determinations for error based on a developed factual record, *see Peck*, 181 S.W.3d at 265–66; *cf.* Tenn. R. App. P. 13(c) ("The Supreme Court, Court of Appeals, and Court of Criminal Appeals may consider those facts established by the evidence in the trial court and set forth in the record and any additional facts that may be judicially noticed or are considered pursuant to Rule 14."). Preservation requirements help trial and appellate courts maintain their distinct roles and avoid lengthy and costly remands and subsequent appeals.

iii.

These limits on an appellate court's authority are important, but they are not "ironclad." *Sineneng-Smith*, 140 S. Ct. at 1579. One notable exception is the issue of subject-matter jurisdiction. It is well settled that an appellate court *must* consider subject-matter jurisdiction, regardless of whether that issue was presented by the parties or addressed below. *See Recipient of Final Expunction Ord. in McNairy Cnty. Cir. Ct. Case No. 3279 v. Rausch*, 645 S.W.3d 160, 167 (Tenn. 2022); *Baker v. Mitchell*, 59 S.W. 137, 138 (Tenn. 1900); *Reynolds v. Hamilton*, 77 S.W.2d 986, 988 (Tenn. Ct. App. 1934); Tenn. R. App. P. 13(b) ("The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review . . . ."); Tenn. R. App. P. 13, adv. comm'n cmt., subdiv. (b) ("Only the absence of subject-matter jurisdiction, whether at the trial or appellate level, must be considered by the appellate court regardless of whether it is presented for review.").

Our Rules of Appellate Procedure also give appellate courts discretion to consider unpresented or unpreserved issues in certain exceptional circumstances.[4] Rule 13(b)—the same rule that generally limits an appellate court's authority to "issues presented for review"—goes on to say that an appellate court "may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." Tenn. R. App. P. 13(b). Rule 36(a) provides that appellate courts "shall grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires." Tenn. R. App. P.

---

[4] The legislature has eliminated this discretion in post-conviction proceedings. In *Holland v. State*, we explained that the language of the Post-Conviction Procedure Act "controls the scope of [appellate] review" in post-conviction proceedings, and "[n]othing in the language of the Act, or our case law interpreting the Act, gives a reviewing court in post-conviction proceedings the authority to raise an issue sua sponte that has been waived." 610 S.W.3d 450, 459 (Tenn. 2020).

36(a). We have held that, together, Rules 13(b) and 36(a) afford appellate courts "discretion to consider issues that have not been properly presented in order to achieve fairness and justice." *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015); *see also Harbison*, 539 S.W.3d at 165; *Emory v. Memphis City Schs. Bd. Educ.*, 514 S.W.3d 129, 148–49 (Tenn. 2017); *State v. Sprunger*, 458 S.W.3d 482, 491–92 (Tenn. 2015).[5] And Rule 36(b), which codified the common-law plain-error doctrine, allows an appellate court to "consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b); *see also Minor*, 546 S.W.3d at 65–66; *State v. Hester*, 324 S.W.3d 1, 56 (Tenn. 2010) (explaining that plain-error review under Rule 36(b) "is discretionary").

Yet an appellate court's discretion to review unpreserved or unpresented issues is not without limits. We have cautioned that this discretion should be "sparingly exercised." *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007) (quoting Tenn. R. App. P. 13, adv. comm'n cmt., subdiv. (b)); *see also State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014); *Hester*, 324 S.W.3d at 70 n.77. And we have repeatedly instructed that, when an appellate court considers an issue that has not been properly presented, it must give the parties "fair notice and an opportunity to be heard on the dispositive issues." *Harbison*, 539 S.W.3d at 165; *see also In re Kaliyah S.*, 455 S.W.3d at 540; *Sprunger*, 458 S.W.3d at 492.

iv.

The requirement that an appellate court give parties notice and an opportunity to be heard is especially important when, as here, an appellate court undertakes to review an issue that was neither preserved below nor presented on appeal. Reviewing an unpreserved and unpresented issue presents an especially strong risk of unfairness and prejudice, since the party who stands to lose on that issue would have no inkling that the issue was in play and therefore no reason to develop a record on the issue, research it, or address it in its briefs. Such review also presents a serious risk of error by depriving the court of the adversarial presentation that is central to the truthfinding function of our judicial system. Affording the parties notice that the appellate court intends to address an issue and an opportunity to be heard on that matter helps mitigate those risks and protect the weighty interests that the party-presentation principle and preservation requirements are designed to foster.

What constitutes adequate notice and an opportunity to be heard may vary from case to case depending on the nature of the issue and underlying record. At a minimum, an appellate court must give the parties notice of the specific issue it intends to address and

---

[5] Rule 36(a) comes with a couple of important caveats. "[R]elief may not be granted in contravention of the province of the trier of fact." Tenn. R. App. P. 36(a). Nor must relief be granted "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *Id.*

sufficient time to review the record, conduct research, and prepare an argument *before* the court rules on the issue. While we hesitate to say that "a court must always ask for further briefing when it disposes of a case on a basis not previously argued," *Trest v. Cain*, 522 U.S. 87, 92 (1997), supplemental briefing ordinarily will be "the best way to test a notion of the court's own invention," *State v. Johnson*, 416 P.3d 443, 456 (Utah 2017). But there may be other means of allowing a party to meaningfully address an issue, such as directing parties to be prepared to discuss the issue at oral argument, and "we do not foreclose such possibilities" here. *Id.* at 457. Suffice it to say, however, that requiring a party to address an issue for the first time in a petition for rehearing *after* the court has already ruled is inadequate.

B.

We now consider whether the Court of Criminal Appeals abused its discretion by considering the jury-instruction issue without providing the parties notice that it intended to reach that issue or an opportunity to address it either in their briefs or at oral argument. We conclude that it did.

It is undisputed that Bristol did not object to the trial court's written jury instructions at trial or raise any discrepancy between the oral and written jury instructions as an issue on appeal. Because the jury-instruction issue was not preserved below or presented on appeal and did not concern the subject-matter jurisdiction of either the trial or appellate court, the Court of Criminal Appeals was not obligated to address it. *See* Tenn. R. App. P. 13(a)–(b). The Court of Criminal Appeals instead had to rely on the discretionary authority afforded by Rules 13(b), 36(a), and 36(b). But one of the factors an appellate court must consider in exercising this discretionary authority, *McCaleb*, 582 S.W.3d at 186, is whether the parties have been given adequate notice and an opportunity to be heard, *see Harbison*, 539 S.W.3d at 165; *In re Kaliyah S.*, 455 S.W.3d at 540; *Sprunger*, 458 S.W.3d at 492.

Here, the Court of Criminal Appeals gave the parties no warning that it intended to consider whether there was a discrepancy between the oral and written jury instructions. To be sure, between oral argument and the issuance of its opinion, the court ordered the trial court to supplement the record with transcripts of the oral jury charge and related discussions. But that order stated that the transcripts were "necessary and essential for complete review *of the issues raised on appeal*" and did not signal that the court also intended to reach an unpresented issue. The parties first learned of the unpresented jury-instruction issue when the Court of Criminal Appeals issued its opinion granting Bristol relief under the plain-error doctrine. By that time, briefing was complete and oral argument had already concluded. So the State's only opportunity to address the issue was to file a petition for rehearing. As explained above, a petition for rehearing does not constitute a meaningful opportunity to address an unpresented issue.

- 10 -

By considering the unpreserved jury-instruction issue without hearing from the parties, the Court of Criminal Appeals lost the benefit of adversarial presentation of that issue—the "best means of ascertaining truth and minimizing the risk of error." *Mackey*, 443 U.S. at 13. The parties were in the best position to explain to the court what had transpired below. Had the court sought their input, it likely would have discovered that the discrepancy in the jury instructions was nothing more than an easily remedied clerical error. The issue could have been quickly put to rest, preventing unnecessary additional proceedings and the reversal of two serious criminal convictions involving a minor victim. While the requirement that courts give the parties notice and an opportunity to be heard before deciding an unpreserved and unpresented issue may seem inefficient at times, it often saves judicial resources in the long run. More importantly, the requirement helps the judicial system reach the correct result and increases the likelihood that the parties and public will perceive the process as a fair one.

## C.

The Court of Criminal Appeals reversed Bristol's convictions based solely on the jury-instruction issue and rejected the arguments Bristol actually raised on appeal. There is therefore no need to remand to the Court of Criminal Appeals to consider any other potential bases for relief. The question remains, though, whether we should remand to allow the Court of Criminal Appeals to consider the jury-instruction issue after giving the parties notice and an opportunity to be heard. We decline to do so because the parties have briefed the jury-instruction issue in this Court, and the current appellate record forecloses relief under the applicable plain-error doctrine. *See Minor*, 546 S.W.3d at 67.

An appellate court may grant relief on an unpreserved issue under the plain-error doctrine only if: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. *Vance*, 596 S.W.3d at 254. The party seeking plain-error relief bears the burden of satisfying these factors. *Minor*, 546 S.W.3d at 70.

Based on the record before it at the time it issued its opinion, the Court of Criminal Appeals concluded that inconsistencies between the written and oral jury instructions constituted a breach of a clear and unequivocal rule of law—namely, Rule 30(c) of the Tennessee Rules of Criminal Procedure and *State v. Gorman*, 628 S.W.2d 739, 740 (Tenn.

1982)[6]—and that this breach adversely affected Bristol's constitutional right to trial by a properly instructed jury.

When we granted the State's application for permission to appeal to this Court, we requested that the trial court clarify which version of the written jury instructions was submitted to the jury and certify that version as part of the appellate record. The trial court confirmed that the jury received the instructions contained in the second supplemental record, which included the critical definitions and instructions omitted from the version in the original appellate record.[7] Because there are no material discrepancies between the written jury instructions and oral jury charge, Bristol cannot establish that any clear and unequivocal rule of law was breached, let alone that the breach adversely affected a substantial right.

Bristol speculates that the jury may not have received the version of the written jury instructions in the second supplemental record, but this speculation falls far short of the sort of "extraordinary circumstances" that would warrant setting aside the trial court's order conclusively settling the issue of the record's accuracy. Tenn. R. App. P. 24(e). And while Bristol complains of some minor differences between the written jury instructions in the second supplemental record and the oral jury charge, he concedes that these minor differences are not material. This concession precludes any argument that differences between the oral charge and written jury instructions adversely affected a substantial right.

Because Bristol is not entitled to plain-error relief based on the current appellate record, we find it unnecessary to remand to the Court of Criminal Appeals to consider the jury-instruction issue after giving the parties notice and an opportunity to be heard. We instead reverse the Court of Criminal Appeals' judgment as to the jury-instruction issue and reinstate Bristol's convictions.

\*     \*     \*

We conclude that the Court of Criminal Appeals abused its discretion in sua sponte raising and deciding an unpreserved and unpresented issue without affording the parties notice and an opportunity to be heard on the matter. Because Bristol cannot establish plain error based on the second supplemental record that is before this Court, we reverse the judgment of the Court of Criminal Appeals that the trial court's written jury instructions

---

[6] Rule 30(c) provides that "every word of the judge's instructions shall be reduced to writing before being given to the jury." Tenn. R. Crim. P. 30(c). We held in *State v. Gorman*, 628 S.W.2d 739, 740 (Tenn. 1982), that this "requirement is mandatory."

[7] The Court of Criminal Appeals did not have the benefit of the trial court's clarifying order when it held that the discrepancy in the jury instructions constituted plain error.

constituted plain error and reinstate Bristol's two convictions for aggravated sexual battery. Costs of this appeal are taxed to Bristol.

_____

SARAH K. CAMPBELL, JUSTICE